## THEW v. MILLER.

1. **Instructions:** ERROR CURED BY VERDICT. Where the jury found that plaintiff was entitled to recover, *held* that alleged errors in instructions relating solely to his right to recover could not have prejudiced him, and were no ground for reversal.

2. **Landlord's Lien:** CONVERSION OF PROPERTY BY JUNIOR LIEN-HOLDER: WHEN CONSUMMATED: DAMAGES. A tenant on plaintiff's farm, by a written contract with defendant, employed him to bale a quantity of hay raised on the farm, at an agreed price per ton, to be paid for upon the tenant's delivering the hay on board cars at a certain time and place. The contract declared the title of the hay to be in defendant, but provided that if the tenant should perform all his agreements as to the hay, including the delivery of it at the time and place agreed, and the payment to defendant then and there of the price for baling, then the title should revert to the tenant; but that if the tenant should fail to perform his part, then defendant should take the hay and sell it, and pay to the tenant the surplus of proceeds, after deducting the price for baling and other expenses, including the cost of performing the tenant's part of the agreement. Under this contract defendant took the hay and shipped it, and plaintiff brought this action against him for the conversion of the hay, thereby defeating his landlord's lien upon it. *Held* that the contract was in the nature of a chattel mortgage, and did not pass to defendant an indefeasible title to the hay,

and that there was no conversion until the hay was actually taken by the defendant for shipping, and that the value of the hay at that time, and not at the time of baling it, was the measure of plaintiff's damages, and that defendant was not liable for its deterioration in value between the time of baling and the time of shipping; it having been all that time in the tenant's possession on the farm.

3. **Conversion:** GENERAL DENIAL: EFFECT. In an action for conversion of property, a general denial puts in issue the value of the property at the time of conversion.

4. ———: VALUE OF PROPERTY: VERDICT ON CONFLICTING EVIDENCE. Where the witnesses as to the value of converted property disagreed widely, some placing it higher, and some lower, than the value found by the jury, but none estimating it at precisely that value, it cannot be said that the verdict was without foundation in the evidence.

*Appeal from Ringgold District Court*—HON. JOHN W. HARVEY, Judge.

WEDNESDAY, MARCH 7.

ACTION at law for the recovery of damages for the conversion by defendant of certain hay, on which plaintiff claimed a landlord's lien. There was a verdict and judgment for plaintiff for a portion of the amount claimed, and he, being dissatisfied with the amount of the recovery, appealed to this court.

*Laughlin & Campbell*, for appellant.

*Askren & Spence*, for appellee.

REED, J.—Some of the rulings of the district court, to which exception was taken, related to plaintiff's right to recover at all, while others related to the measure of his recovery in case it should be found that he was entitled to recover. With reference to those rulings which related to his right to recover, we deem it sufficient to say that, as the jury have found that he was entitled to recover, he was in no manner prejudiced by the rulings, even though they should be found to be erroneous.

It is alleged in the petition that plaintiff leased a farm to

1. INSTRUC-
TIONS: error
cured by
verdict.

one Whittaker, for the year 1885, who agreed to pay as rent

**2. LAND-LORD'S LIEN: conversion of property by junior lienholder: when consummated: damages.**    therefor the sum of $700 on the 1st of January, 1886; that the hay in question was raised on the premises during the term, and was in stack on the farm; and that defendant entered upon the premises, and took possession of and removed said hay therefrom, and converted the same to his own use; and that the value thereof was $800. The answer contained a general denial of the allegations of the petition. In another paragraph or division it was admitted that defendant had baled and shipped certain hay from the farm, but it was alleged that said hay was of no value except what was imparted to it by defendant's labor. It was proven on the trial that defendant and Whittaker entered into the following contract with reference to the property: " I, F. H. Whittaker, certify that all the hay now situated on the Davis farm is legally my property; that there is no mortgage, lien, claim or interest held by any other person or persons against said property. J. S. Miller, of the first part, agrees to bale the above-described hay in good shipping shape. He also agrees to perform said work as expeditiously as circumstances will permit. F. H. Whittaker, of the second part, agrees to haul said hay to the barn as soon as it is baled, and there to store it until on or near the 15th of March, when he agrees to deliver said hay on board the cars at Wirt. He also agrees that he will pay said Miller the sum of $2.50 per ton for baling said hay; said money to be paid on or before the time of the completion of the loading of each car, and according to the weights of the scales at Wirt. In case said Whittaker fails to deliver said hay to the barn or on board the cars, as herein agreed, he then agrees that said Miller shall have the privilege of having the work done at the expense of said Whittaker. To insure said Miller that said work will be done, and said money paid, as herein provided for, said Whittaker transfers all his rights and ownership of said hay to said Miller, and said Miller

agrees to pay to said Whittaker all of the selling price of said hay at the time it is sold, after reserving to himself the price herein stated for baling, together with other expenses of delivering and storing said hay that may have fallen to him to bear. But, provided that said Whittaker shall do the work of hauling, delivering and storing said hay, also that he shall pay the price of baling as each car is loaded, and fulfill his part of the agreement, then the hay shall be his property. It is fully agreed by parties of first and second parts that said hay shall remain the property of said Miller until he is paid for baling, at the rate of $2.50 per ton; also until he is paid for other expenses that may have necessarily accrued to him in the delivery or storing of said hay, or until on or near March 15, 1886, when he then shall sell the same, and out of the proceeds retain price of baling and other expenses as herein provided for, unless said Whittaker shall pay said expenses as said hay is carred, when, in such case, he shall become full owner." It was also proven that defendant baled the hay under this contract, the work being done in December and January; and that in April following he took possession of it, and shipped it by rail to Chicago, where it was sold on the market. In the meantime, between the baling and the shipping, it was stored in a barn on the the farm on which it was raised, the work of storing being done by Whittaker. The rulings complained of, which related to the measure of plaintiff's recovery, were the admission of evidence tending to prove that the value of the hay had been impaired after it was baled, and before it was shipped, in consequence of its exposure to the weather, and the giving of an instruction which directed the jury, in effect, that defendant was not responsible for any injury which the property may have sustained in consequence of the neglect or failure of Whittaker to take proper care of it after it was baled, and before defendant took possession of it and shipped it.

Plaintiff's position is that, by the contract between him

and Whittaker, defendant obtained such an interest in the property that his act of baling it amounted to a conversion, and the measure of his damages was its value at that time, and not at the time of the shipment; and consequently the the evidence as to its value at the time of the shipment was immaterial and the instruction erroneous. If the effect of the agreement was to vest in defendant the absolute ownership of the property from the time the work of baling was done, it may be that this proposition would be correct. But, on the other hand, if the interest he acquired was in the nature of a lien for the security of the amount he was to receive for the work, no such result would follow; for in that case the interest in the property acquired by him under the contract was junior and inferior to plaintiff's lien. His act of baling the hay was not a trespass upon the right of plaintiff, for it had no tendency to impair or defeat his lien; and the mere act of taking a junior lien upon the property as a security for the amount which would become due him for the work, was not an invasion of any of plaintiff's rights.

When the contract is looked at in all of its provisions, it is clear, we think, that defendant did not under it acquire the absolute ownership of the property. That it conveyed the title to him is certainly true, and that it clothed him with the right, in a certain contingency, to sell it, and empowered him to transfer the title to the purchaser, is equally clear; but it is apparent from the terms of the agreement that the parties intended it as a security. It contains a condition in the nature of a defeasance. Whittaker reserved the right to pay when any car-load of the hay should be loaded the amount due to defendant for baling the same, and any other expenses he might have incurred with reference to it; and upon such payment the property therein would reinvest in him. The right conferred upon defendant was to sell the property in default. Every essential condition of a chattel mortgage is expressed in the instrument. (See Jones, Chat. Mort. (2d Ed.) §§ 14–17.) Up to the time defendant shipped the property

to Chicago, and sold it, he held the interest in it which he acquired under the contract subject to the superior lien which plaintiff held upon it; and up to that time nothing had been done which in any manner impaired that lien. Plaintiff could have seized it at any time before that; and it was that act which defeated his right. It was that act which consti- tuted a conversion, and it is for the value of the property at that time that plaintiff is entitled to be compensated.

It is further insisted that neither the evidence nor the in- struction was relevant to any issue in the case; but the general 3. CONVER- denial contained in the answer raised an issue as SION: gen- eral denial: to the value of the property at the time of the effect. conversion, and both are relevant to that issue. It is also contended that the finding as to the value of the property is without support. But we think otherwise. 4. ——— : value Evidence of the value of the property is neces- of property: verdict on sarily matter of opinion. A number of witnesses conflicting evidence. were examined on the subject, and their opinions differed widely as to the value of the hay at the time. It is true that no witness fixed the amount at the exact sum found by the jury; some of them being of the opinion that it was worth more than that, while others thought it was of less value. The jury were not bound to accept absolutely the opinion of any witness on the subject; but it was their duty to give such weight to the testimony of each as it appeared fairly entitled to, and to deduce from all the evidence such conclu- sion as to them seemed just. We see no reason for supposing that the amount of the verdict was not fairly arrived at by the jury.

AFFIRMED.