EMIL EDGREN, Appellee, v. SCANDIA COAL COMPANY, Appellant.

MASTER AND SERVANT: Mines—Failure to Furnish Props—
Miner Continuing Work—Statutorily "Safe"—Negligence per Se.
Whether a mine is "safe" within the meaning of our Mining
Act, providing no miner shall work in his place "until it is made
safe," depends on the facts ascertainable by reasonable dili-
gence *before* the accident, and not on the *later* developments of the
accident itself. In other words, if a miner makes an examina-
tion such as a reasonably cautious miner would make and dis-
covers nothing that such a miner would deem unsafe, then the
place is "safe," statutorily, and he may continue work, guiltless
of negligence *per se*, even though an accident follows, demon-
strating that in truth it was unsafe. (Secs. 2489-5a, 2489-16a,
Sup. Code, 1913.).

PRINCIPLE APPLIED: A miner, injured by a fall of slate
because of insufficient propping, had frequently requested, and
had been promised, props, but operator had failed to deliver
them. In the face of the statute he continued work, after proper
examination. *Held*, he was not guilty of negligence *per se*—
that he had not violated the statute.

MASTER AND SERVANT: Mines—Unpropped Roof—Miner Con-
tinuing Work—Contributory Negligence per Se. Evidence re-
viewed and held not to show contributory negligence on the
part of a miner working in a partially propped room.

PRINCIPLE APPLIED: A miner's room ran north and south,
was 100 feet long, 20 feet wide and some 4 feet high. A track
was laid along west wall and some 5 feet therefrom. The roof
was slightly lower on west side of track than on the east side,
owing to a "roll" or "step down" in the slate roof. This
"roll" was about on the line of the west rail. "Rolls" fre-
quently are attended with "slips" or breaks in the continuity
of the slate. There was evidence that this "roll" contained no
"slip." Some days before the accident, plaintiff requested the
foreman to timber over his track because of the "roll." Plain-
tiff propped the entire roof west of the line of this "roll," and
also the entire roof east of the track, except to within 35 feet of

the face, or north end. This 35 feet was partially propped by a
row of props 3 or 4 feet apart, near the east rail. The rest of
the area remained without props. Plaintiff repeatedly requested
other props. Though promised, they had not been furnished.
Plaintiff examined the roof, deemed it safe, pushed his car 35
feet south of the face and commenced to load from the west side
of track. At this point, the roof was fully propped west of
track, and the short row of props extended along the east side
of car and 7 feet north of the car. The roof fell primarily from
the unsupported roof but carried with it part of the supported
roof. No fall came from west of the track. The break was
along the line of the "roll."

MASTER AND SERVANT: Mines—Falling Roof—Failure to Fur-
3   nish Props—Proximate Cause. When the roof of a mine fell
    because of the absence of props, the proximate cause of such
    fall may be deemed the mine owner's failure to furnish the
    props, it appearing that the miner had requested the props and
    would have installed them had they been furnished. (Secs.
    2489-5a, 2489-16a, Sup. Code, 1913.)

MASTER AND SERVANT: Mines—Failure to Furnish Props—
4   Miner Continuing Work—Assumption of Risk. A miner, having
    requested the mine operator to furnish him props with which to
    prop the room in which he was working, does not, by continu-
    ing at his work, assume the risk arising from the operator's
    failure to furnish them. (Sec. 4999-a3, Sup. Code, 1913.)

MASTER AND SERVANT: Mines—Failure to Prop Roof—Injury—
5   Facts Essential to Recovery. A miner seeking to recover for in-
    juries received from the falling of the roof of his mining place
    by reason of insufficient props thereunder must show:
    1. That he had requested the owner to furnish the props.
    2. That the owner had failed to do so within a reasonable time.
    3. That the owner's failure to furnish the props was the reason
       for his failure to prop the roof.
    4. That upon "entering" his place of work, his first act was to
       diligently examine the said roof.
    5. That the said examination revealed nothing to him that he
       deemed unsafe, and that he therefore believed it safe. (Secs.
       2489-5a, 2489-16a, Sup. Code, 1913.)

MASTER AND SERVANT: Instructions—Contributory Negligence—
6   Inadvertent Omission. An instruction, intended to cover the sub-
    ject of contributory negligence, but inadvertently omitting the
    word "negligence," held insufficient.

APPEAL AND ERROR: Rulings Adverse to Winning Party—Review.
7   Rulings of the trial court, adverse to the winning party but not
    affecting the amount of recovery, will not be reviewed by the
    appellate court.

*Appeal from Boone District Court.*—HON. R. M. WRIGHT,
Judge.

SATURDAY, MARCH 13, 1915.

REHEARING DENIED SATURDAY, OCTOBER 2, 1915.

ACTION for damages for personal injuries to an employee
in a coal mine. The injury resulted from a fall of slate. The
plaintiff thereby lost his left arm at the shoulder joint and
the thumb and forefinger of his right hand. There was a
verdict for the plaintiff. The defendant appeals.—*Reversed.*

*John T. Clarkson* and *Stevens, Frye & Stevens,* for
appellee.

*Parker, Parrish & Miller,* and *C. Woodbridge,* for appel-
lant.

EVANS, J.—The defendant is a corporation engaged in
coal mining. The plaintiff was an experienced coal miner in
its employ. The accident resulted from a falling roof which
was insufficiently propped. The negligence charged against
the defendant was that it failed, after repeated requests from
the plaintiff, to furnish props for the propping of such roof.
The defense interposed was a general denial and plaintiff's
assumption of risk and contributory negligence. The acci-
dent occurred in the plaintiff's room or "place of work."
The entry which immediately connected with this room ex-
tended east and west. The room extended from the entry
toward the north. This room had been worked to a depth
of 100 feet from such entry. It was about 20 feet wide,
except at its south end, next to the entry, where it was only
about 9 feet wide. As the miner's work progressed, a track

was laid in the room and extended from time to time. The course of this track was almost due north, bearing, however, a little east. It was laid 4 or 5 feet east of the west wall or "rib" of the room. The thickness of the vein was about 4 feet. The height of the room varied to some extent, because of a "roll" or "step down," in the slate which comprised the roof. By reason of this "roll," the roof was slightly lower on the west side of the track than on the east. This roll, when first uncovered at its south end, entered into the coal bed about 2 inches. As the room was enlarged toward the north by the removal of the coal, the roll became deeper, so that at the final north face of the room as it was at the time of the accident, its penetration into the coal bed was about 8 inches. The principal part of the room required 4½-foot props, and these were called for by the plaintiff several days in succession. The plaintiff had in his room 4-foot props and 5-foot props. He was able to use the 4-foot props and did use the same on all that part of the roof lying west of the line of the roll. This line of the roll in the roof was about on the line of the west rail of the track. On the east side of the track, the room was fully propped to within about 35 feet of the north end or face, and partly propped for a further distance, in that a row of props 3½ or 4 feet apart was placed near to and parallel with the east rail of the track. This left an unpropped area of considerable size. At 2:00 o'clock on the day before the accident, the mine foreman was present in the room and promised to send a man down to saw the 5-foot props and render them suitable for use in propping this area. This had not been done at the time of the accident, which occurred the next morning at 7:30. Upon the morning of the accident, the plaintiff entered his room shortly after 7:00 o'clock and made an examination of the roof in the usual way and discovered, as he supposed, that it was solid and, for the time being, safe. He did not, however, proceed with his mining at the face of the room, but he did proceed to load a car with his "stock coal" which he

had accumulated in a pile on the west side of the track. He pushed the car on its track to a point 30 or 35 feet south of the face. At such point he was loading his car, when a fall of slate occurred. This was the result of lack of support to the roof. It came primarily from the unsupported part of the roof, but brought with it a part of the roof which was supported by 'props. At that moment, the plaintiff was in front of his car adjusting the position of a block of coal. The fall was confined to the east side of the line of the "roll" heretofore referred to. No fall occurred on the west side of the track. The roof over plaintiff's head at the time of the accident was supported by the row of props on the west side of the track already referred to, extending nearly to the face of the room, and by the shorter row of props on the east side of the track, extending to within 17 or 18 feet of the face of the room. This row extended about 7 feet further north than plaintiff's position at the time of the injury. The reason why the room was not propped up to within 6 or 10 feet of the working face was that the plaintiff had been unable to obtain from the defendant the necessary props for that purpose. The foregoing is sufficient statement to enable us to consider the bearing of certain sections of the statute which are of controlling importance. In presenting the foregoing as the "facts," we do so only in the sense that they have support as such in the evidence.

I. At the close of the evidence, the defendant moved for a directed verdict in its favor on the grounds (1) that no actionable negligence on the part of the defendant was shown in that, if it was negligent at all, such negligence was not the proximate cause of the injury; (2) because the plaintiff had failed to show himself free from contributory negligence and because it appeared conclusively that he was guilty of contributory negligence; and (3) because it appeared conclusively that the plaintiff had assumed the risk of the injury which resulted to him.

1. MASTER AND SERVANT: mines: failure to furnish props: miner continuing work: statutorily "safe": negligence per se.

This motion was overruled and the case was submitted to the jury. It is now contended for the defendant that such motion ought to have been sustained. This contention is based upon certain recent enactments which have a very important bearing upon the respective rights of the parties herein. The first of these for our consideration is chapter 106 of the Acts of the Thirty-Fourth General Assembly, now incorporated in Sec. 2489 *et seq.* of the Code Supplement of 1913. It is provided therein as follows:

"Sec. 2489-5a. The owner, lessee, operator or person in charge of any mine shall at all times keep a sufficient supply of caps and timbers to be used as props or otherwise, convenient and ready for use and shall send such caps, timbers and props down when requested and deliver them to the places where needed."

"Sec. 2489-16a. It shall be the duty of each employee to examine his working place upon entering the same and shall not commence to mine or load coal or other mineral until it is made safe. Each miner or other employee employed in a mine shall securely prop and timber the roof of his working place therein. . . . When draw-slate or other like material is over the coal, he shall see to it that proper timbers are placed thereunder for his safety before working under the same."

From the first section above quoted, it will be observed that it is the duty of the employing corporation to keep a supply of props convenient and ready for use, and that it is its duty to "send such props down when requested and deliver them to the places where needed." Under the second section, the duty to prop and timber the roof of the miner's room or working place is upon the miner himself. Manifestly, however, this particular duty cannot rest upon him until his employer has sent the props down. The duty of the employer to send the props down does not arise until the miner has

requested the same. The miner, therefore, is under the antecedent duty to make request for needed props, and we may assume that such request ought to be made at such a time as will give the employer a reasonable time and opportunity to comply therewith before danger be imminent. The further twofold duty is laid upon the miner: (1) To examine his working place upon entry of the same, and (2) he "shall not commence to mine or load coal or other mineral until it is made safe." These duties are continuing duties and rest upon the miner regardless of whether his employer has supplied him with suitable props or not. The affirmative duty here laid upon him is to "examine his working place upon entering the same." He must not permit his attention to be diverted to any other work until he has made such examination. It is a duty of inspection. The second duty trails the first and is prohibitive and negative and forbids him to "commence to mine or load coal" until his working place "is made safe."

The first contention of defendant at this point is that, as the failure of the employer to furnish props when requested becomes negligence as a matter of law because of a violation of the statute, so the failure of the miner, if any, to discover the unsafe condition in his room, and his failure to refrain from mining and loading coal until safety be secured, are also negligence as a *matter of law,* because it is a violation of the express provisions of the statute; and that if it be such negligence, then it becomes the proximate cause of the injury, or at least a contributing cause, either of which will defeat recovery.

For the plaintiff, it is argued that the term "safe" is a relative term and that it necessarily involves different degrees and that its ascertainment in advance must necessarily rest on the judgment of the inspector; and that, therefore, if the plaintiff in this case, in compliance with the statute, did examine the roof of his room with reasonable diligence under all the circumstances, and if, upon such examination,

the conditions discovered indicated a solidity and soundness which satisfied him of its safety; and if, in the manner of making such examination and the extent of it, and in the conclusion which he reached, he acted and judged as a reasonably prudent person of experience would have acted and judged, then he was justified in deeming the place as "safe" and he did not violate the statute by proceeding to load his coal in the manner in which he did.

If we were to adopt the contention of the defendant, it would make the miner an insurer of the safety of the mine, regardless of any breach of duty on the part of the employer. The constructive negligence of the miner thus created would necessarily act as a screen to the employer against the consequences of his default, regardless of the diligence and judgment which the miner might exercise in a given case. We think that the term "safe" is necessarily a relative one. By its very meaning it involves degrees. There can be no such thing as absolute safety,—certainly not in a coal mine. There may be comparative safety or a high degree of safety. Even then the accident may happen. *After* the accident, and in the light thereof, it was disclosed that the place was not previously safe and the danger was in fact imminent. *Before* the accident, it may have been beyond the range of ordinary diligence, skill, and experience to have discovered the danger. If this had been a case of failure to prop when props were furnished, or a failure to request props when they ought to have been requested, quite a different question would be presented. The miner is not required to keep out of his room because it is not propped. He is required to inspect it promptly and diligently and to discover its dangers to the extent that diligence will discover the same. He is necessarily exposed to possible danger in the performance of this duty. If in the inspection he discovers indications of a condition which a reasonably prudent man would not regard as safe, then the place is not safe within the meaning of the statute. And the converse of this proposition must likewise

be true, assuming that there has been no want of reasonable diligence in the inspection. In other words, the criterion of *safety*, within the meaning of the statute, must be the facts or conditions which were ascertainable by reasonable diligence *before* the accident, and not merely the later developments of the accident itself.

II. It is contended for the defendant that, even under the criterion here declared, the contributory negligence of the plaintiff was conclusively made to appear. The "roll" which has been referred to was in the nature of a defect in the roof in that such a formation often, if not usually, is attended with a "slip." By a "slip" is meant a break or cleavage in the continuity of the slate structure of the roof. When the fall of slate occurred, the line of the roll represented the break or west line of the falling roof. The plaintiff had, some days before, requested the foreman to timber over his track because of such roll. It is argued that the plaintiff, as an experienced miner, must have known that the unpropped area was large and that the roll was liable to contain a "slip." It is argued further that the very fact that he had repeatedly requested the props was conclusive evidence of his knowledge of their need and the impending danger to be avoided by their use, and that he therefore necessarily knew that the place was not safe, and he was not justified in putting himself under such roof for the purpose of loading coal. The evidence is by no means conclusive that a "roll" is always attended with a "slip." Nor is it conclusive that there was a "slip" in this case. The evidence does show that the slate broke at or near that line, but this fact can be accounted for plausibly by the fact that the roof to the west of such line was supported by the row of props. It also appears in evidence for the plaintiff that there was no slip in this roll. The fact that plaintiff ordered the props should by no means be considered as evidence of knowledge of imminent or impending danger. If this contention were sustained, a miner could not work after

2. MASTER AND SERVANT: mines: unpropped roof: miner continuing work: contributory negligence per se.

ordering props until the props were actually received. This would result in very intermittent work, because some reasonable time must elapse before the request for props can be complied with. The general practice which seems to obtain is that the miner must foresee his needs to some extent and make his request so that the employer shall have reasonable time to comply. The statute impliedly recognizes the fact that the roof of the mine presents latent and potential danger at all times, even though such danger be not imminent or impending. The potential danger may become imminent at any time "in the hour that ye think not." This potential danger is not eliminated by the mere fact that the place is found safe for the time being. The imminent danger may be guarded against temporarily by frequent inspection and permanently by propping and timbering. It should be conceded that the unpropped area in this room was large and that the call for props had been insistent and repeated and that its potential danger was naturally becoming imminent by reason of the area and elapsing time. If this were all, these circumstances would be very significant and persuasive. As against these, however, is the fact that the plaintiff was not working under the unpropped area. That part of the roof under which he was working was propped. The short row of props on the east side extended north of where he was standing, a distance of 7 feet. We think, therefore, that the evidence of contributory negligence was not of such a conclusive character as to require a directed verdict for the defendant.

III. It is urged for the defendant that its negligence, if any, in failing to furnish the props was not actionable in that it was not and could not be the proximate cause. Par-

3. MASTER AND SERVANT: mines: falling roof: failure to furnish props: proximate cause.

ticular reliance is placed upon the case of *Lammey v. Coal Company*, 144 Iowa 640, and *Williams v. Coal Company*, 146 Iowa 489. In the first cited case, the injured party had discovered the loosened condition of the roof in advance of the accident and had feared it, but reck-

lessly continued to work under it, nevertheless. Contributory negligence was found. In the *Williams Case*, the room was propped as close to the working face as the convenience of the miner would permit. In the unpropped space was a loosened stone, which would have been discovered by the customary inspection. The injured miner neglected to inspect. It was held there that the absence of props had no causal relation to the accident. Though in that case the miner had put in an order for props, it was in anticipation of later needs and delivery was not expected except in the ordinary course, which would require two or three days. And if the props had been present in the mine, they could not and would not have been used prior to the time of the accident. These cases do not furnish support for defendant's contention at this point. If the *plaintiff* was guilty of negligence, then such negligence either contributed to the injury or was the independent cause of it. In either case, the question of defendant's negligence would become quite immaterial. If the plaintiff was not guilty of contributory negligence, was the accident without fault of anyone? The evidence was ample to justify a finding that the defendant's failure to furnish the props was the sole reason for the failure of the plaintiff to prop and that the plaintiff would have propped the entire area up to a short distance from the working face if the props had been furnished. It is to be conceded that there is some apparent remoteness between the defendant's negligence and the accident. This apparent remoteness arises out of the statutory recital of the respective duties of employer and miner. Their respective duties under the statute are intervening and alternating. The duty of each is split, so to speak. The initial duty of the employer is to ''keep props ready for use.'' He is not required at this point to send them down to the miner. Before this duty arises, the duty of request must be performed by the miner. Thereupon, the duty to send the props down to the miner is imposed upon the employer. The duty of the miner to prop does not arise until the antecedent duties have been performed. He is, how-

ever, at all times under the duty of inspection and discovery of those ascertainable indications of either progressing or imminent danger. The duty of the employer is predicated primarily upon the potential danger of the unpropped roof—a danger not necessarily imminent. The duty of inspection imposed upon the miner deals with the more imminent. In that sense, the miner stands between the employer and the consequences of his negligence or delay, if any. But the employer is charged also with the knowledge that the potential danger of the unpropped roof may become the imminent danger at any moment, and that this may occur in a way against which the reasonable diligence of the miner cannot provide without props, and in a way to prevent discovery even by the reasonable diligence of the miner. If we were to hold, therefore, that the failure of the employer to comply with the provisions of this statute was too remote to be the proximate cause of the ultimate injury, we would quite destroy the manifest purpose of the statute. We think, therefore, that the violation of the statute at this point by the employer should be deemed as an obstacle in the way of propping the mine and that the failure of the miner to prop in such a case should be deemed the failure of the employer. If it can be said, therefore, that the failure to prop the mine was the proximate cause of the accident, then the alleged negligence of the defendant could be such proximate cause. Under the evidence in this case, the question was properly for the jury.

IV. Considerable argument is devoted to the question of assumption of risk. The argument for the defendant is that, though it be true that the defendant failed to furnish the props, such fact was known to the plaintiff, and that the danger arising therefrom was as well known and appreciated by him, as an experienced miner, as it could have been to his employer. The trial court submitted the question of assumption of risk to the jury. But the defendant

4. MASTER AND SERVANT: mines: failure to furnish props: miner continuing work: assumption of risk.

complains of the form of the instructions whereby it was submitted. Because of the conclusion we reach, we will not deal with the specific errors presented at this point. The question of assumption of risk would be clearly involved in the case, were it not for chapter 219, Acts of the Thirty-third General Assembly, which now appears as Sec. 4999-a3, Code Supplement of 1913, which is as follows:

"That in all cases where the property, works, machinery or appliances of an employer are defective or out of repair, and where it is the duty of the employer from the character of the place, work, machinery or appliances to furnish reasonably safe machinery, appliances or place to work, the employee shall not be deemed to have assumed the risk, by continuing in the prosecution of the work, growing out of any defect as aforesaid, of which the employee may have had knowledge when the employer had knowledge of such defect, except when in the usual and ordinary course of his employment it is the duty of the employee to make the repairs, or remedy the defects. Nor shall the employee under such conditions be deemed to have waived the negligence, if any, unless the danger be imminent and to such extent that a reasonably prudent person would not have continued in the prosecution of the work; but this statute shall not be construed so as to include such risks as are incident to the employment; and no contract which restricts liability hereunder shall be legal or binding."

If we are correct in our views already expressed as to the causal relation between the negligence of the defendant and the accident in question, then it must be said that the defect of failure to prop was a defect of appliances which it was the duty of the defendant to furnish. Knowledge of such failure was known equally to the employer and the employee. The purpose of this statute is to forbid the employer to lay upon his employee the consequences of his own failure simply because such failure was known to the employee. There is

a certain stress or momentum in the industries that keeps them moving for a time though supports be broken and defects be apparent and though the risk of accident be thereby greatly increased. This stress has heretofore been borne by the employee. The manifest purpose of this statute is to lay it upon the employer. It is argued for the defendant that this case is governed by the exception stated in the statute above quoted, viz., that it was the duty of the plaintiff in the ordinary course of his employment "to make the repairs or remedy the defects." That is to say, ordinarily it would be the duty of the plaintiff to put up the props. As we have already seen, such duty would not arise until the props had been furnished, and it never did arise in the case before us.

We are clear, therefore, that this feature of the case is controlled by the quoted statute. The question of assumption of risk, therefore, is not in the case. The case must turn upon the question of the negligence of the defendant and that of the contributory negligence of the plaintiff; and these questions must be governed by the terms of the statute which we have already quoted.

The conclusions announced above have support in the following cases: *Low v. Clear Creek Coal Company,* (Ky.) 131 S. W. 1007, and *Johnson v. Mammoth Vein Coal Company,* (Ark.) 114 S. W. 722; although the statutes construed in the cited cases differ somewhat in material respects from those herein construed.

V. Complaint is urged against many of the instructions. We shall not deal with these *seriatim.* It is enough to say that the case was not submitted to the jury upon the theory that

5. MASTER AND SERVANT: mines: failure to prop roof: injury: facts essential to recovery.

the respective rights and duties of the parties were controlled by the statutes which we have above quoted. The question of the liability of the defendant was submitted as the common-law liability for negligence and without regard to the particular statutory provisions. The burden was upon the plaintiff to show (1) that he had re-

quested the props; (2) that they had not been furnished
within a reasonable time; (3) that this was the reason for
his failure to prop the roof; (4) that upon entering the mine
upon the morning of the accident he made a diligent examina-
tion of the roof; (5) that with reasonable diligence in his
examination he could not discover indications of a loosening
roof, and that as a reasonably prudent man he believed the
same to be safe at that time. All of the foregoing propositions
are based upon the express provisions of the statute. None
of these questions were submitted to the consideration of the
jury.

Complaint is directed against Instruction VII, which was
as follows:

"One who is injured by the negligence of another can-
not recover compensation for his injury if he by his own
ordinary or wilful wrong contributed to pro-
duce the injuries of which he complains, so
that but for his concurring and co-operating
fault, the injury would not have happened
to him."

6. MASTER AND
SERVANT:
instructions:
contributory
negligence: in-
advertent
omission.

It is quite evident that the word "negligence" was
omitted by inadvertence after the word "ordinary." This
was the only instruction given on the subject of contributory
negligence. From what we have already said, it is manifest
that it was not sufficient.

Complaint is directed against instruction VI, which pur-
ports to be an abstract definition of negligence. We need not
set it out. It is sufficient to say that it is a departure from
the usual definition and is of doubtful accuracy, to say the
least. An appropriate definition is set forth in instruction
VIII. We think it preferable to the other.

Complaint is urged against several instructions which
deal with the question of assumption of risk. In view of what
we have said in division IV hereof, we need not deal with
these.

VI. The trial court withdrew from the consideration of the jury certain allegations of negligence made in the petition and withdrew the evidence offered by the plaintiff in support thereof. From such order, the plaintiff has appealed and has argued the questions thus presented. The plaintiff won his verdict. The petition of plaintiff was in one count and for general damages. The trial court withdrew no cause of action, nor did it withdraw any item of damages; nor did the order affect the measure of damages. The plaintiff having finally won the verdict, such rulings of the court, even if erroneous, were necessarily nonprejudicial. *Herman & Marks v. Hass,* 166 Iowa 340.

7. APPEAL AND ERROR: rulings adverse to winning party: review.

The only relief which the plaintiff could obtain would be a new trial. He obtains that upon the appeal of the defendant. Our appellate practice does not contemplate that we shall give abstract consideration to the grievances of the winning party unless they operated to the reduction of the recovery. The effect of the reversal on the appeal of the defendant is to set aside the adjudication and to re-open the case for trial.

For the reasons indicated, a new trial must be awarded and the judgment below is accordingly—*Reversed.*

DEEMER, C. J., LADD and PRESTON, JJ., concur.