Richard **MILLS** and Laureen Mills, Appellants,

v.

**GUTHRIE COUNTY RURAL ELECTRIC COOPERATIVE ASSOCIATION, Appellee.**

No. 88–1581.

Supreme Court of Iowa.

April 18, 1990.

Rehearing Denied May 23, 1990.

David J. Welu of Welu and Welu, Redfield, for appellants.

Hugh J. Cain, Stephen R. Eckley, and Thomas G. Fisher, Jr. of Duncan, Jones, Riley & Finley, P.C., Des Moines, for appellee.

Considered by HARRIS, P.J., and SCHULTZ, CARTER, SNELL, and ANDREASEN, JJ.

CARTER, Justice.

Plaintiffs, Richard Mills and Laureen Mills, who recovered a judgment against the defendant, Guthrie County Rural Electric Cooperative Association, for damages arising from an electrical fire in plaintiffs' hog farrowing facility, appeal urging that trial court errors resulted in an inadequate recovery of damages. Upon considering the arguments of the parties, we affirm the district court's determination of the liability issue, reverse its judgment as to the damage issue, and remand the case for a retrial as to plaintiffs' damages.

Plaintiffs are husband and wife who farm northwest of Redfield in Dallas County. The defendant is engaged in the business of production, sale, and distribution of electricity to rural customers. On March 6, 1986, a fire destroyed plaintiffs' hog farrowing facility, including livestock and other personal property contained therein. The livestock destroyed in the fire included approximately one hundred eight baby pigs, thirteen unbred sows, thirty-six bred sows, eight replacement gilts, and twenty lambs. The cause of the fire was an imbalance in electrical voltage delivered to plaintiffs' farm.

The fire was investigated by an insurance adjuster employed by defendant's insurance carrier. Plaintiffs had numerous conversations with this adjuster over a period of several months. They contend that the adjuster at all times acknowledged defendant's liability and made repeated promises that a favorable settlement offer would be made. The adjuster did eventually make a settlement offer which plaintiffs rejected. When that offer was later increased, it was again rejected.

Plaintiffs commenced this action based on theories of *res ipsa loquitur*, specific negligence, statutory violations, strict liability, tortious interference with business relationships, bad-faith failure to settle, and intentional infliction of emotional distress. The liability issues were ultimately submitted to the jury on a single theory of specific negligence. The jury found in plaintiffs' favor and allowed a recovery of $30,062.

On this appeal, plaintiffs claim that the trial court should have submitted the liability issues on a theory of strict liability in addition to negligence. They also contend that the court erred in not submitting their tortious interference and failure-to-settle claims, in excluding evidence of lost profits, and in failing to allow the jury to award damages for emotional distress and punitive damages. Other significant facts which bear upon our decision in this appeal are stated and considered in our discussion of the legal issues presented.

I. *Failure to Submit Additional Legal Theories Concerning Defendant's Liability.*

We first consider plaintiffs' contention that the district court erred in failing to submit additional legal theories under which the jury might find the defendant liable. This argument pertains, *inter alia,* to the proffered theories of *res ipsa loquitur*, statutory violation, strict liability in tort, tortious interference with a business relationship, and tortious refusal to settle. The defendant argues that plaintiffs may not predicate reversible error on liability issues when the verdict of the jury was in his favor on the matter of liability. We agree.

The district court submitted the issue of defendant's liability under a single theory of specific negligence. The jury found that the defendant was negligent and awarded damages. This court has consistently held that errors against a party are cured by a verdict in that party's favor unless the error goes to the amount of damages. *Nassif v. Pipkin,* 178 N.W.2d 334, 337 (Iowa 1970); *Edgren v. Scandia Coal Co.,* 171 Iowa 459, 474, 151 N.W. 519, 524–25 (1915); *Thew v. Miller,* 73 Iowa 742, 743, 36 N.W. 771, 772 (1888). Apart from the

question of punitive damages, which we consider separately, plaintiffs make no suggestion that the elements of damage that would have been recoverable under the theories of liability not submitted would have differed from those elements of damage recoverable under their negligence claim.

■ Plaintiffs assert that certain of their pleaded causes of action, if sustained, would have permitted the jury to award exemplary damages. In considering the facts on which plaintiffs' claim is predicated, we do not believe that this contention is correct. The evidence revealed that the conduct which caused the voltage irregularity was (a) defendant's use of split bolt connectors instead of compression connectors to connect a grounding jumper wire to the main neutral line, and (b) defendant's failure to discover the dangerous situation which that omission presented.

We have said that an award of punitive damages is not appropriate unless it is established that the defendant acted with actual or legal malice. *Barnhouse v. Hawkeye State Bank*, 406 N.W.2d 181 (Iowa 1987). In applying this rule, we have held that

> [a]ctual malice is shown by such things as personal spite, hatred, or ill will. Legal malice is established by showing wrongful conduct committed with a willful or reckless disregard for the rights of another. More than mere negligence must be shown.

*Id.* at 184; *Klooster v. North Iowa State Bank*, 404 N.W.2d 564, 572 (Iowa 1987). Defendant's conduct was not sufficiently egregious to permit the recovery of punitive damages. The trial court correctly refused to submit any claim of punitive damages to the jury.

■ Plaintiffs urge that defendant's conduct should be measured not only by the acts which caused the voltage irregularity but also by the conduct employed in settlement negotiations with the plaintiffs. We cannot agree that defendant's conduct with respect to settlement, even when viewed in the light most favorable to the plaintiffs, permits a recovery of punitive damages.

This court has previously held that a third-party claimant may not maintain a bad-faith tort action against an insurer of one who has tortiously damaged that claimant. *See Long v. McAllister*, 319 N.W.2d 256, 262 (Iowa 1982). It appears that the actions of which plaintiffs complain were primarily those of defendant's liability insurance carrier. We do not believe that the insured may be vicariously liable for such actions under circumstances in which the insurer would not be liable under the holding in *Long*.

Plaintiffs' assignments of error pertaining to evidentiary issues relating to liability (such as the exclusion of the adjuster's concession of liability) and the district court's refusal to grant partial summary judgment or partial directed verdict on the liability issues are also subject to the rule that errors against a party are cured by a verdict in that party's favor. Consequently, we need not consider these claims on the merits.

II. *Refusal of Amendment Claiming Intentional Infliction of Emotional Distress.*

■ Prior to trial, plaintiffs filed a motion to amend their petition to assert a claim for intentional infliction of emotional distress. The trial court refused to allow the amendment. It did not indicate in this ruling that the proffered amendment was untimely but, rather, found that the factual allegations did not give rise to such a claim.

No specific offer of proof was made at the time of this ruling. Considering the totality of the evidence adduced at trial, however, we find no basis for having included such a claim in the issues submitted to the jury. We need not base this determination on whether the degree of emotional distress, if any, which plaintiffs were shown to have suffered was sufficient to sustain an intentional infliction claim. The court must first determine whether the relevant conduct of the defendant was sufficiently outrageous to permit such a claim. *See Roalson v. Chaney*, 334 N.W.2d 754, 756 (Iowa 1983).

■ In making that determination, we have followed the requirement set forth in Restatement (Second) of Torts section 46 comment *d.* For conduct to be sufficiently outrageous to permit an intentional infliction claim, it must go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community. *Harsha v. State Sav. Bank,* 346 N.W.2d 791, 801 (Iowa 1984). Indeed, we have recognized that it is not even sufficient that the conduct in question would have entitled the plaintiff to punitive damages. *Vinson v. Linn–Mar Community School Dist.,* 360 N.W.2d 108, 118 (Iowa 1984). Judged by these standards, defendant's conduct, as shown by the evidence, fell far below that which is required in order to sustain a claim for intentional infliction of emotional distress.

III. *Rulings by the Court Restricting Proof of Lost Profits.*

■ We next consider plaintiffs' contention that the trial court erred in refusing to permit the jury to award damages for lost profits and in excluding the testimony of witnesses with respect to their lost-profit claims. The only elements of damage which the trial court submitted to the jury were the destruction of personal property (including the value of the animals) and the destruction of the farrowing building. In ruling on defendant's motion in limine seeking to exclude evidence of lost profits, the trial court sustained those motions in their entirety and continued to adhere to that ruling in the face of offers of proof submitted by plaintiffs. In making up the jury instructions, the trial court refused to submit any issue on lost profits as an element of damage.

Defendant seeks to uphold the court's rulings precluding proof of lost profits on the basis that such losses, if any, did not represent a proper element of damage for the loss which plaintiffs sustained from the fire. Specifically, defendant relies on the following language in *Miller v. Economy Hog & Cattle Powder Co.,* 228 Iowa 626, 293 N.W. 4 (1940):

The measure of damages for the destruction of animals is the difference between their value before the occurrence which caused the deaths and the value of the remains. However, the remains of destroyed animals, other than those intentionally slaughtered, frequently have no value or none over and above the trouble and expense entailed in disposing of the same. In such cases the value before death correctly measures the damage resulting from the death.

*Id.* at 639, 293 N.W. at 10–11. Defendant notes that, in the *Miller* decision, this court reversed the district court on the ground that it had permitted the jury to award damages for future lost profits.

■ Although we agree that ordinarily damages for the total destruction of tangible property by fire is the reasonable market value of that property before destruction, *see, e.g., Walters v. Iowa Elec. Co.,* 203 Iowa 467, 470, 212 N.W. 884, 886 (1927), there may be an additional compensable loss when this results in a business interruption. In such cases, a plaintiff is also entitled to recover the usable value of the destroyed property during the time reasonably required to replace it. *Nizze v. Laverty Sprayers, Inc.,* 259 Iowa 112, 120, 143 N.W.2d 312, 317 (1966). In some cases, this usable value is best measured by the rental value of the property. *Knaus Truck Lines v. Commercial Freight Lines,* 238 Iowa 1356, 1367, 29 N.W.2d 204, 210 (1947); *Kohl v. Arp,* 236 Iowa 31, 39–40, 17 N.W.2d 824, 828–29 (1945). In cases where it is unlikely that similar property is available on a rental basis, it is necessary to measure loss of use by other means. In certain limited instances involving income generating property, lost profits is an acceptable measure of loss of use. *Stahl v. Farmers Union Oil Co.,* 145 Mont. 106, 113, 399 P.2d 763, 766–67 (1965); D. Dobbs, *Remedies* § 5.11, at 387 (1973).

The *Miller* case merely applied the principle that, in an action to recover for loss of livestock, a plaintiff cannot recover for the market value of the animals at the time they were destroyed and also recover for profits which would have been sustained in the sale of those same animals. That is not plaintiffs' theory of recovery in the present

case. They are seeking damages for business interruption in a "farrow to finish" hog operation. While recovery of the market value of the hogs that were destroyed precludes plaintiffs from also recovering profits based on their inability to sell those hogs, this circumstance should not preclude additional damages based on interruption in the production of additional litters during the period of time reasonably required to replace the destroyed farrowing facility.

Plaintiffs made an offer of proof that plaintiff Laureen Mills had many years experience in hog production and, if permitted, would testify as to the potential profit from future pig litters during the period of interruption. In addition, plaintiffs made another offer of proof that Eldon J. Hans, who holds an MS Degree in livestock production from Iowa State University and had been a county extension director and consultant with Doane Agricultural Service, could testify as to lost profits from the "farrow to finish" operation during the period of interruption.

The elements of damage outlined in these offers of proof may have been overbroad in the sense that they extended the period of business interruption from the time of the fire until the time of trial and beyond. That circumstance, however, does not justify the trial court's ruling denying recovery of lost profits for any period of business interruption. We have recognized that a party is not required to prove more than is necessary to entitle that party to the relief requested, or any lower degree of relief included therein. *Wolfe v. Graether*, 389 N.W.2d 643, 658 (Iowa 1986); Iowa Code § 619.9 (1987).

Rather than precluding any proof of lost profits as a measure of loss of use, the district court should have pared either the claim, the evidence, or both in order that the jury would receive only those elements of loss which were properly recoverable. The offer of proof with respect to the evidence to be offered by Eldon J. Hans indicates a minimal six-month period of interruption from the time of the fire until plaintiffs' farrowing facility could again be made fully operative. Based on all of the

evidence presented, it would have ultimately been up to the jury to fix the length of that period. It might have been longer or shorter than six months.

It would have been possible, we believe, to interpolate the lost profit figures attributable to the more elongated period of time referred to in the offers of proof and come up with some loss of profits attributable to the loss of use of plaintiffs' farrowing facility during the reasonable period of time required to restore it to its prior state.

The court of appeals affirmed an award of damages for lost profits experienced by a hog producer as a result of negligent construction of a hog confinement building in *Bushman v. Cuckler Building Systems*, 421 N.W.2d 145 (Iowa App.1988). This court approved the recovery of consequential damages, including lost profits, flowing from disruption of a hog-producing operation in *Nachazel v. Miraco Manufacturing*, 432 N.W.2d 158, 161 (Iowa 1988). In rejecting a claim that the proof of lost profits was speculative, the court of appeals in *Bushman* stated:

> While plaintiffs are required to establish the amount of claimed damages with some reasonable degree of certainty, mathematical precision is not required. . . .
>
> In the present case, [plaintiff] testified to the amount of profits lost based upon his estimates of hogs lost, market prices in the geographically relevant area during the pertinent years, and the average weight of a market hog. These elements were based upon certain records kept in conjunction with [plaintiff's] operation and [plaintiff's] experience in the hog markets and with his particular operation. [This] evidence [was] sufficient to remove the issue of damages from the realm of speculation.

421 N.W.2d at 148 (citations omitted).

Although *Nachazel* and *Bushman* are cases involving damages caused by defective farrowing facilities rather than totally destroyed farrowing facilities, situations involving the total destruction of chattels do not preclude an award of consequential

damages. *See Long,* 319 N.W.2d at 260–61.

IV. *Damages Sustained With Regard to Loss of the Farrowing Facility.*

■ Because the case must be retried on the issue of damages, we must also consider plaintiffs' claims that the district court erred in refusing to allow recovery for loss of the farrowing facility based on replacement cost. We find no error in that determination. There was evidence in the record, including the depreciation schedules on plaintiffs' tax returns, which indicated that the depreciated cost of the structure which was destroyed was considerably less than its replacement cost.

V. *Refusal to Permit Recovery of Damages for Emotional Distress.*

■ Plaintiffs also urge that, even if the court did not err in refusing to submit their claim of intentional infliction of emotional distress, it should have allowed the jury to award emotional distress damages in connection with the negligence claim. We disagree. It is the general rule in this state that, absent intentional conduct by a defendant or some physical injury to the plaintiff, no recovery may be had for emotional distress. *Wambsgans v. Price,* 274 N.W.2d 362, 365 (Iowa 1979); *Kunau v. Pillers, Pillers & Pillers,* 404 N.W.2d 573, 578 (Iowa App.1987). There are, of course, exceptions to this rule. These include the right of a bystander to recover for emotional distress caused by witnessing serious injury or death experienced by a close relative. *See Barnhill v. Davis,* 300 N.W.2d 104, 108 (Iowa 1981). Another exception has been recognized in the situation of health care providers in situations where their obligation to care for a patient's physical care evokes "such 'mental concern and solicitude' that the breach [thereof] will inevitably result in mental anguish, pain and suffering." *Oswald v. LeGrand,* 453 N.W.2d 634, 639 (Iowa 1990). These exceptions do not embrace the economic business losses which plaintiff experienced in the present case.

We have considered all issues presented and conclude that for the reasons expressed in Division III the judgment of the district court should be reversed. The case is remanded to that court for a retrial of the damage issues only. Any attempt by plaintiffs on retrial to recover damages for lost profits should be submitted in accordance with the principles set forth in this opinion.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.