# IN THE COURT OF APPEALS OF IOWA

No. 18-1475
Filed August 21, 2019

**CHADMARK, LLC,**
        Plaintiff-Appellant,

**vs.**

**KRISTIN BUSH,**
        Defendant-Appellee.
_____

        Appeal from the Iowa District Court for Polk County, Michael D. Huppert, Judge.


        Trucking company appeals a district court's calculation of damages resulting from a motor vehicle accident.  **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**


        Jeffrey M. Lipman of Lipman Law Firm, P.C., West Des Moines, for appellant.

        Michael J. Moreland and Nicholas T. Maxwell of Harrison, Moreland, Webber, Simplot & Maxwell, P.C., Ottumwa, for appellee.


        Considered by Potterfield, P.J., Greer, J., and Scott, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**GREER, Judge.**

In a stipulated-liability motor vehicle accident case, the district court awarded loss-of-use damages to Chadmark, LLC resulting from damage to one of its trucks. The company appeals the court's calculation of damages and asserts it is also entitled to damages for out-of-pocket expenses to retrieve the replacement truck. We agree with the district court's calculation of loss-of-use damages but find additional damages for out-of-pocket expenses are appropriate. For that reason, we reverse and remand for entry of a new damage award.

## I. Background Facts and Proceedings.

On July 23, 2015, Kristin Bush failed to yield at a stop sign in Polk County and her vehicle collided with a Chadmark dump truck. Bush admitted liability for the accident.

Chadmark is a dump truck company that hauls dirt, rock, and sand in central Iowa. On the day of the accident, the damaged truck—identified as "Truck #10"— was working on hauling projects as part of a team of four Chadmark trucks. Because the truck was totaled, Chadmark could not use Truck #10 after the accident, and it eventually purchased a replacement truck in Texas.

On October 12, Bush's insurer issued a check to Chadmark for $29,049.68 to pay for the loss of use of Truck #10.[1] Chadmark at first rejected the check as "insufficient to address the actual loss incurred," but it later deposited the check, noting on the draft: "not accepted as final settlement."

---

[1] The insurer also paid Chadmark's property damage claim, and Chadmark does not challenge the amount it received for property damage.

According to Chadmark's records, it operated without Truck #10 from the July 23 accident until September 24 when it began using the replacement truck. During this time frame, the other three trucks in the team continued hauling and generating revenue and expenses. Chad Larson, as the sole owner of Chadmark at the time of trial, testified Truck #10 and its driver would have continued hauling with the other three trucks had it not been involved in the accident. Larson offered that he also operates a Chadmark truck, but between the accident and retrieval of the replacement truck, Truck #10's regular driver drove Larson's truck and Larson stopped driving. Larson continued to receive his officer's salary from Chadmark during this period.

In May 2017, Chadmark filed its petition claiming Bush was negligent and seeking damages. Chadmark provided its calculations for gross revenues, fuel costs, gross driver wages, and driver payroll expenses per day for the three remaining team trucks from July 23 to September 24. Related to the retrieval of the replacement truck, Chadmark also claimed it paid total out-of-pocket expenses of $3533.14—$908.14 for airfare, $225 for lodging, and $2400 for freight—to purchase the replacement truck in Texas and transport it to Iowa.

In August 2018, after a bench trial, the district court entered its ruling. The court calculated loss-of-use damages by finding the average gross revenue per truck per day; subtracting average costs per truck per day for fuel, wages, and employment taxes; and multiplying by the number of days Truck #10 was expected to be in use, which generated gross damages of $29,139.11. The court denied Chadmark's request for out-of-pocket expenses. Because Bush already paid

$29,049.68 to Chadmark for loss-of-use damages before trial, the court entered net judgment of $89.43 plus interest. Chadmark appeals.

## II. Standard of Review.

We review the grant or denial of damages for correction of errors at law. *Brokaw v. Winfield–Mt. Union Cmty. Sch. Dist.*, 788 N.W.2d 386, 388 (Iowa 2010). "Under this scope of review, the trial court's findings of fact have the force of a special verdict and are binding on us if supported by substantial evidence." *Id.* "We view the evidence 'in the light most favorable to the trial court's judgment.'" *Id.* (quoting *Miller v. Rohling*, 720 N.W.2d 562, 567 (Iowa 2006)). However, we are not bound "by the trial court's application of legal principles or its conclusions of law." *Midwest Recovery Servs. v. Wolfe*, 463 N.W.2d 73, 74 (Iowa 1990); *see also Gosch v. Juelfs*, 701 N.W.2d 90, 91 (Iowa 2005).

## III. Analysis.

Chadmark raises two issues on appeal: (1) whether the district court erred by deducting the employee expenses for Truck #10's driver when calculating loss-of-use damages and (2) whether the court erred by failing to award out-of-pocket damages for the expenses associated with retrieving the replacement truck.

**A. Loss of Use.** The parties agree Chadmark is entitled to loss-of-use damages. *See, e.g.*, *Long v. McAllister*, 319 N.W.2d 256, 261 (Iowa 1982) (holding loss-of-use damages are available in motor vehicle accident cases). The parties also generally agree on the formula for loss-of-use damages. At trial, the parties championed the "daily average fleetwide earnings" loss-of-use damage theory, which subtracts expenses from the gross revenue of the truck team to calculate the average truck earnings per day for the time Truck #10 was inoperable. *See,*

*e.g.*, *ConAgra, Inc. v. Inland River Towing Co.*, 252 F.3d 979, 985 (8th Cir. 2001) (noting "daily average fleetwide earnings" is an appropriate methodology for calculating loss of use from damage to those used in operating the business). However, Chadmark disagrees with the court's subtraction of employee expenses for Truck #10's regular driver from the gross revenue. Chadmark argues the driver's expenses are appropriate damages because while Truck #10 was inoperable it "continued to pay two drivers [Truck #10's regular driver and Larson], only one of which could produce income by driving a truck."

Loss-of-use damages compensate a party for "the usable value of the destroyed property during the time reasonably required to replace it." *Mills v. Guthrie Cty. Rural Coop. Ass'n*, 454 N.W.2d 846, 850–51 (Iowa 1990). An award of lost profits should reasonably reflect damages from the business interruption. *See id.* at 851. Had Truck #10 remained in use after the accident, Chadmark would have paid the truck expenses, including the costs of a driver. We are not persuaded by Chadmark's claim that the loss of Truck #10 forced it to incur additional employee expenses it otherwise would not have. According to its 2015 profit and loss statement, Chadmark paid a significant "Officer Salary" in addition to "Employee Expenses." At trial, Larson explained how duties shifted without Truck #10 and acknowledged he earned his salary based on his work as an officer and not his driving:

> Q. [Truck #10's regular driver] was assigned to some other duties in the company; right? A. He drove my truck during this eight-week period.
> Q. So he was producing revenue doing something else for the company? A. I took myself out of the truck so he could keep a job.

Q. I'm asking—you're saying—you're saying that you still incurred driver's wages for a truck that wasn't operating? A. I don't get driver's wages. I get—I'm on salary.

For that reason, the driver expenses legitimately should have been deducted to calculate the real losses that Chadmark would have experienced to operate Truck #10. If the driver expenses were not deducted, Chadmark would be in a better position than it would have been had the accident not occurred. We find the court appropriately deducted the driver's employee expenses, and substantial evidence supports the award of loss-of-use damages.

**B. Out-Of-Pocket Expenses.** Chadmark also sought to recover out-of-pocket expenses for airfare, hotel, and freight hauling to retrieve the replacement truck. Bush argues Chadmark failed to preserve this issue for our review. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

Chadmark argued to the district court that its out-of-pocket expenses were additional consequential damages flowing from the loss of the truck. In its ruling, the district court referred to the out-of-pocket expenses in a footnote, commenting "these expenditures are not appropriate in calculating loss of use damages." We agree Chadmark's out-of-pocket expenses are not loss-of-use damages. However, throughout this litigation Chadmark has consistently sought to recover its out-of-pocket expenses as damages, which were not limited to loss of use. We view the court's comment as showing it considered and generally denied damages for the out-of-pocket expenses. This is not a "failure to rule upon the issue" case. *See Lamasters v. State*, 821 N.W.2d 856, 864 (Iowa 2012) ("If the court's ruling

indicates that the court *considered* the issue and necessarily ruled on it, even if the court's reasoning is 'incomplete or sparse,' the issue has been preserved." (emphasis in original) (quoting *Meier*, 641 N.W.2d at 540)). We conclude Chadmark raised—and the district court ruled on, albeit only by footnote—the question of reimbursement for these expenses. As a result, out-of-pocket expenses are preserved for our review.

"It is axiomatic that the principle underlying allowance of damages is that of compensation, the ultimate purpose being to place the injured party in as favorable a position as though no wrong had been committed." *Dealers Hobby, Inc. v. Marie Ann Realty Co.*, 255 N.W.2d 131, 134 (Iowa 1977). Generally, when a vehicle cannot be repaired, "the measure of damages is the lost market value plus the reasonable value of the use of the vehicle for the time reasonably required to obtain a replacement." *Long*, 319 N.W.2d at 261. This general rule is "subject to proof of special items of damages." *Schiltz v. Cullen-Schiltz & Assocs., Inc.*, 228 N.W.2d 10, 20–21 (Iowa 1975). Recoverable special items include "integral part[s] of the direct property damage incurred," such as "rental equipment and cleanup operations." *Id.* at 21.

While Chadmark's out-of-pocket expenses are not loss-of-use damages, Chadmark offered these expenses as additional damages that arose out of the loss of Truck #10. Chadmark provided documentation to support its claims of out-of-pocket expenses, which entered the record without objection or question from Bush. We find the out-of-pocket expenses are an integral part of acquiring the replacement truck that, under these particular facts, places Chadmark in a position

as if Truck #10 had not been damaged.  Accordingly, we remand for an entry of judgment to reflect an additional $3533.14 in out-of-pocket expenses.

**IV.  Disposition.**

We agree with the district court's calculation of loss-of-use damages, including the deduction for driver employee expenses.  However, we find an additional $3533.14 in special damages for out-of-pocket expenses are appropriate.  Therefore, we reverse and remand for entry of a new judgment to reflect the additional damages.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**