Raymond **BALLARD** and Claudette **Ballard, Appellees,**

v.

**AMANA SOCIETY, INC., Appellant.**

No. 93–899.

Supreme Court of Iowa.

Jan. 18, 1995.

---

Kevin H. Collins, William H. Courter, and Christopher J. Henderson of Shuttleworth & Ingersoll, P.C., Cedar Rapids, for appellant.

Peter C. Riley of the Tom Riley Law Firm, P.C., Cedar Rapids, for appellees.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, ANDREASEN, and TERNUS, JJ.

PER CURIAM.

Raymond and Claudette Ballard filed suit against Amana Society, Inc. seeking direct and economic damages associated with injuries to their swine herd. The Ballards alleged their swine herd was injured after ingesting toxic corn purchased from Amana. The jury returned a verdict finding Amana eighty percent at fault and awarding damages of $87,000, including $75,000 in lost profits. Amana appealed, claiming the court erred in denying its motion for new trial and judgment notwithstanding the verdict because: (1) the Ballards were not entitled to lost-profit damages; (2) the Ballards' expert based his lost-profits calculation upon a four-year business interruption, which is unreasonable as a matter of law; and (3) the Ballards' evidence of lost profits was overly speculative. Amana also claimed the court erred in submitting both strict-liability and breach-of-warranty theories to the jury.

The court of appeals affirmed in part and reversed in part, finding the Ballards were entitled to lost-profit damages but that the Ballards' evidence of lost profits was overly speculative. It also determined the court erred in submitting both strict-liability and breach-of-warranty theories to the jury. We granted the Ballards' application for further review.

I. *Background.*

The Ballards run a farrow-to-finish hog operation, involving breeding sows and raising their litters for slaughter. In 1989 Amana delivered corn to the Ballards' farm to be fed to the swine herd. The Ballards later discovered the corn contained toxins, causing the death of several hogs and a reduction or elimination of the sows' reproductive abilities.

The Ballards sued Amana, seeking the fair market value of the swine that died and any lost profits associated with reestablishing the herd at a level of production representative of the growth they claim they would have achieved but for the toxic corn. The Ballards based their suit upon negligence, strict liability, breach of contract, breach of express warranty, breach of implied warranty of fitness for a particular purpose and breach of the implied warranty of merchantability. The matter proceeded to a jury trial.

The district court submitted the issues of strict liability, breach of express warranty, breach of implied warranty of fitness for a particular purpose and breach of implied warranty of merchantability. It also submitted special interrogatories, requesting, in part, that the jury respond "yes" or "no" to each of the plaintiffs' theories.

The jury returned a verdict in the Ballards' favor. It responded "yes" to the interrogatory concerning breach of implied warranty of fitness for a particular purpose. It did not specifically indicate whether it was accepting or rejecting the plaintiffs' other theories. It awarded the Ballards $87,000, including $75,000 for lost profits.

The court denied Amana's motion for judgment notwithstanding the verdict and new trial. Amana appealed.

The court of appeals majority affirmed the judgment as to the damages associated with the replacement cost of the herd but reversed the award for lost profits. It determined the Ballards' evidence related to lost profits was overly speculative. It also determined the district court erred in submitting both strict-liability and breach-of-warranty theories to the jury. We granted the Ballards' application for further review and now address all issues properly presented on direct appeal. See Bokhoven v. Klinker, 474 N.W.2d 553, 557 (Iowa 1991).

## II. Recovery of Lost Profits.

Amana initially claims the Ballards cannot recover lost profits as a matter of law. Citing Miller v. Economy Hog & Cattle Powder Co., 228 Iowa 626, 639, 293 N.W. 4, 10–11 (1940), and Stockdale v. Agrico Chemical Co.,

340 F.Supp. 244, 256 (N.D. Iowa 1972), it claims the Ballards can only recover the market value of the hogs.

This issue has been decided adversely to Amana in Mills v. Guthrie County Rural Electric, 454 N.W.2d 846 (Iowa 1990). In Mills, we were faced with a plaintiff seeking damages associated with the business interruption of a farrow-to-finish hog operation which had been destroyed by fire. 454 N.W.2d at 851. In determining certain consequential damages could be recovered, we stated:

> While recovery of the market value of the hogs that were destroyed precludes plaintiffs from also recovering profits based on their inability to sell those hogs, this circumstance should not preclude additional damages based on interruption in the production of additional litters during the period of time reasonably required to replace the destroyed farrowing facility.

Id.

■ In this case, the Ballards also seek to recover damages based on an interruption in their farrow-to-finish operation's ability to produce litters. Based upon Mills, we believe the Ballards may recover lost profits associated with the reestablishment of their hog operation.

## III. Sufficiency of the Evidence to Establish Lost Profits.

Amana claims the Ballards' evidence regarding lost profits was overly speculative, precluding them from recovering such damages. See Hoefer v. Wisconsin Educ. Ass'n Ins. Trust, 470 N.W.2d 336, 341 (Iowa 1991). It claims the Ballards relied exclusively on the testimony of their expert, Dr. Michael Behr. According to Amana, Dr. Behr's economic model was faulty in several particulars. Amana claims he failed to distinguish between "lost revenues" and "lost profits," calculated damages without distinguishing between those associated with ingesting the toxic corn and those associated with purchasing diseased animals, failed to properly define profits, and relied upon improper assumptions when calculating the growth of the swine herd.

The Ballards claim precedent indicates it is merely necessary to show a reasonable basis from which damages may be inferred or approximated. *See Smith v. Smithway Motor Xpress, Inc.,* 464 N.W.2d 682, 688 (Iowa 1990) (All that is required to justify an award of damages "is that the plaintiff produce the best evidence available and that this evidence afford a reasonable basis for estimating the loss.") (citing *Nicholson v. City of Des Moines,* 246 Iowa 318, 327, 67 N.W.2d 533, 538 (1954)). They claim Dr. Behr's testimony satisfied this requirement.

Dr. Behr is a forensic economist with substantial experience in agribusiness. He received Bachelor of Science and Master of Science degrees from the University of Minnesota in 1957. He received minors in plant industry and animal husbandry. He later received Master of Arts and Doctor of Philosophy degrees from the University of Wisconsin with majors in agricultural economics and a minor in economics. Additionally, following the receipt of his first Master's degree, he spent six years running a farm.

Dr. Behr projected a level of revenue associated with 104 breeding sows, the number of sows the Ballards were utilizing at the time their herd ingested the toxic corn. He then subtracted the variable expenses to arrive at expected profits. *See King Feature Syndicate v. Courier,* 241 Iowa 870, 43 N.W.2d 718 (1950) (lost-profit damages calculated by subtracting variable expenses from revenues). He compared this expected profit level to the actual profits experienced by the Ballards. He based his figures upon documentation provided by the Ballards and farm budgeting data provided by Iowa State University when the Ballards' documentation was lacking. The figures from Iowa State University are an estimation of the costs of feed and other inputs that are required for particular levels of hog production. These figures are extrapolated from actual farm data. Dr. Behr calculated the total loss due to business interruption to be $220,400.

 We believe Dr. Behr's testimony provided a reasonable basis upon which the jury could determine lost profits. The jury apparently recognized some weaknesses in Dr. Behr's testimony, as it awarded only $75,000 in lost profits compared to Dr. Behr's estimation of $220,400. *See Mercy Hosp. v. Hansen, Lind & Meyer,* 456 N.W.2d 666, 672 (Iowa 1990) (it is for the jury to determine the weaknesses in an expert's testimony). Because the jury's award is within the evidence, we will not disturb it. *See Haumersen v. Ford Motor Co.,* 257 N.W.2d 7, 16 (Iowa 1977).

IV. *Reasonableness of Length of Business Interruption.*

Amana claims the Ballards' attempt to obtain lost profit damages for a four-year business interruption is unreasonable as a matter of law. *See Mills,* 454 N.W.2d at 850 (plaintiff may only recover usable value of destroyed property during time reasonably required to replace it). It claims the Ballards could have, and should have, purchased swine of like quality and grade shortly after discovering the difficulties with the toxic corn. It also claims it should not be held responsible for any extension in the business interruption resulting from a third party providing diseased hogs for repopulation.

The Ballards claim Dr. Behr's economic model reasonably calculated it took four years for the Ballards to achieve the level of production they would have experienced but for the toxic corn. They claim Amana should be responsible for the full four-year business interruption regardless of whether it was prolonged by diseased hogs used for repopulation.

 We believe the Ballards presented sufficient evidence to allow the jury to base its damage award upon a four-year business interruption, notwithstanding the fact the interruption was prolonged by the acquisition of diseased hogs. Repopulation of the Ballards' swine herd was necessitated by Amana's actions. The possibility that some of the hogs used for repopulation would be diseased, thereby increasing the business interruption, was reasonably foreseeable. If an intervening act is reasonably foreseeable, it will not relieve the original wrongdoer of liability. *Haumersen,* 257 N.W.2d at 15. Thus, the foreseeable acquisition of diseased hogs was not an intervening cause sufficient

to relieve Amana of its liability for the full four-year business interruption. *Cf.* Restatement (Second) of Torts § 465 (1965) (original tortfeasor is liable for additional harm resulting from efforts to mitigate harm caused by original negligence).

## V. *Submission of Strict Liability Theory.*

Amana also claims the trial court erred in submitting both strict-liability and breach-of-warranty theories. Citing *Nelson v. Todd's Ltd.,* 426 N.W.2d 120, 125 (Iowa 1988), they claim the Ballards were precluded from receiving lost-profit damages under strict liability because they did not suffer the type of physical damage which will support consequential economic loss damages in tort.

In *Nelson,* the owners of a butcher shop suffered damages when a meat curing agent failed to work as designed and prevent treated meat from spoiling. 426 N.W.2d at 121. The plaintiffs brought suit against the manufacturer of the curing agent, seeking damages for spoiled meat, lost past and future profits and the loss in value of their meat processing equipment and property. *Id.* We found that, in order to resolve the issue of whether both strict-liability and breach-of-warranty theories may be presented to the jury, we must "determine whether contract law or tort law is best suited to the nature of the loss claimed, focusing particularly on anything dangerous to the user in the nature of the defect." *Id.* at 124. We ultimately determined the plaintiffs' proper remedy was in contract rather than tort because the loss related to "a consumer or user's disappointed expectations due to deterioration, internal breakdown or nonaccidental cause...." *Id.* at 125.

> Tort theory, on the other hand, is generally appropriate when the harm is a sudden or dangerous occurrence, frequently involving some violence or collision with external objects, resulting from a genuine hazard in the nature of the product defect. For example, had [the curing agent] caused chemical burns to the [butchers'] hands or damaged their meat processing equipment, an action would lie in strict tort liability. That sort of harm could not have been reasonably anticipated by the con-

tracting parties, and would be a hazard peripheral to the sale.

*Id.* Thus, we held the trial court erred in submitting both strict-liability and breach-of-warranty theories to the jury. *Id.*

Unlike the damages suffered by the plaintiffs in *Nelson,* we believe the injuries to the Ballards' swine herd support damages in tort. We believe the existence of toxins in the feed corn was a genuine hazard peripheral to the sale and a serious product defect, causing the death of swine and a significant business interruption. Consequently, we hold the trial court did not err in submitting both strict-liability and breach-of-warranty theories to the jury.

## VI. *Summary.*

We believe the Ballards were entitled to lost-profit damages and that they presented sufficient evidence to support the jury's damage award. We do not believe that, under the facts of this case, awarding damages for a four-year business interruption is unreasonable as a matter of law. We also do not believe the trial court erred in submitting both strict-liability and breach-of-warranty theories to the jury. Accordingly, we vacate the decision of the court of appeals and affirm the judgment of the district court.

DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.