36 P.3d 742

**Shidan DAHNAD, D.D.S., Petitioner,**

v.

**The Honorable John A. BUTTRICK, Judge of the Superior Court of the State of Arizona, in and for the County of Maricopa, Respondent Judge,**

**The Arizona State Board of Dental Examiners, Real Party in Interest.**

**No. 1 CA–SA 01–0262.**

Court of Appeals of Arizona, Division 1, Department B.

Dec. 11, 2001.

---

Law Office of Jeffrey J. Tonner, P.C. By Jeffrey J. Tonner, Phoenix, Attorney for Petitioner.

Janet Napolitano, Attorney General By Mary DeLaat Williams, Assistant Attorney General, Phoenix, Attorneys for Real Party in Interest.

## OPINION

FIDEL, Judge.

¶ 1 At an emergency meeting, the Arizona State Board of Dental Examiners summarily suspended the dental license of Petitioner Shidan Dahnad. Although the Board gave Petitioner notice of the meeting, it denied him an opportunity to be heard in advance of its order, and it failed to set an immediate or expeditious hearing after the fact. The superior court accepted jurisdiction of Petitioner's petition for special action but denied relief, and he now brings this further petition to this court. For reasons that follow, we accept jurisdiction and grant relief. We conclude that the Board may, if emergency circumstances require such action, summarily suspend a dental license without providing a pre-suspension hearing, but that the Board must then promptly convene a post-suspension hearing and may not let the hearing abide the ordinary course of the administrative hearing schedule.

## JURISDICTION

¶ 2 No plain, speedy, or adequate appellate remedy exists if the Board has erroneously administered a summary suspension. One must exhaust the administrative hearing process before launching a legal challenge in the superior court, and the administrative process, as presently conducted, can drag out for month after month. *See infra* ¶ 9 n. 1. During this process, a dentist summarily suspended cannot practice dentistry; nor, if the suspension turns out to have been improper, can the dentist's lost income be restored.

¶ 3 This case also presents an issue of pure law and one of statewide importance, as dentists throughout the state are subject to the Board's practices and procedures. When a hearing must be provided to accomplish a summary suspension is a question that ought to be clarified, and it is one that, if not resolved by special action, will likely elude review. (By the time of an appeal, the ordinary administrative hearing and review schedule will have wound its course, resulting in orders that supersede the initial, summary, suspension order.)

¶ 4 For these reasons, we find it proper to exercise special action jurisdiction in this case. *See State ex rel. Miller v. Superior Court,* 189 Ariz. 228, 230, 941 P.2d 240, 242 (App.1997).

## BACKGROUND

¶ 5 On Friday, August 31, 2001, A.H. telephoned the Board to complain that, while she interviewed with Petitioner for employment in his office, Petitioner asked her to help him test a new tank of nitrous oxide. She said that, after everyone else had left the office, Petitioner administered the gas, then rubbed her back, held her hand, kissed her cheeks and lips, and lifted up and looked inside her shirt. A.H. pretended to be unaware of these actions. Petitioner left the room, returned after five to ten minutes, and turned off the nitrous oxide and turned on or increased the oxygen flow. Petitioner told A.H. that no one else need know that he had given her the nitrous oxide. She submitted her allegations in the form of a sworn affidavit.

¶ 6 On Tuesday, September 4, at 4:30 p.m., the Board gave Petitioner notice that it would convene an emergency meeting the next day at 5:00 p.m. to consider "possible

legal action including possible summary suspension" of his license "for inappropriate physical contact and inappropriate use of nitrous oxide." On the day of the meeting, Petitioner's counsel filed a written request for the complainant's name, invoking A.R.S. § 32–1263.02(B) (Supp.2000), which provides, "If requested, the board shall inform the respondent of the name of the complainant unless the complaint involved a licensee's alcohol or drug impairment." The Board's Executive Director refused this request. Counsel also filed a written request for the evidence to be presented, so that Petitioner could defend against the allegations. The Board's Executive Director refused this request as well.

¶ 7 At the beginning of the Board meeting, its legal counsel advised:

> Usually, when this Board meets to decide questions of fact, you're asked to in fact make a decision on what really happened and what type of discipline would be necessary. In this particular case, however, you will not be making any decisions in that sense of the word you are used to. Instead, what you have before you are allegations. The doctor has not had the opportunity to rebut these allegations and will not have this opportunity today. The only job you have before you today, is to decide whether the allegations as presented, are sufficiently serious to warrant emergency action in the form of suspending this doctor's license, pending the opportunity for him to present his side of the story at a hearing. In order for you to make that finding, you would need to decide that the public's health, safety and welfare is imperatively endangered by the nature or seriousness of the allegations.

¶ 8 The Board's investigator summarized A.H.'s affidavit, and the Board members discussed the health risks of administering nitrous oxide without constant supervision and the impropriety of Petitioner's alleged touching of A.H. Petitioner's counsel was present but was not allowed to speak, although he sought the opportunity. An assistant attorney general offered an opinion that the allegations were "of a sufficient nature" that summary suspension was appropriate. She also offered proposed Preliminary Findings of Fact and Conclusions of Law, which the Board adopted.

¶ 9 The Board's findings recited the allegations and concluded that they described unprofessional conduct and grounds for disciplinary action. The Board also found that "the public health, safety and welfare imperatively require emergency action." The Board ordered that Petitioner's license be summarily suspended "until the conclusion of the administrative proceedings. Pursuant to A.R.S. § 41–1092.05, a hearing in this matter will be convened within sixty days." [1]

¶ 10 The superior court accepted jurisdiction of Petitioner's special action and, after a hearing, rejected his argument that § 41–1092.11(B) (1999) required an opportunity for a full hearing before the Board could suspend his license. The court ruled that the statute allows summary suspension without a full hearing when, as here, the Board finds that public health or welfare requires emergency action. It also ruled that the statute provides for "a sensible and reasonably prompt and meaningful post-deprivation plenary hearing." The court declined to either dismiss the matter with prejudice or stay the suspension order.

## THE GOVERNING STATUTES

¶ 11 To resolve this matter, we interpret A.R.S. § 41–1092.11(B), which provides:

---

1. The hearing commenced, but was not completed, on October 30, 2001. It was scheduled to continue on November 30, 2001. The record does not make certain whether the hearing was likely to be concluded on that date. The administrative law judge has twenty days after concluding the hearing in which to render a decision, A.R.S. § 41–1092.08(A) (Supp.2000), which the Board may review and either accept, reject, or modify within thirty days. A.R.S. § 41–1092.08(B). The Board meets only bi-monthly. If the Board's decision is unfavorable to Petitioner, he must exhaust administrative remedies by filing a Petition for Rehearing or Review. A.R.S. § 41–1092.09(B) (1999). The Board must rule on that petition at the next (bi-monthly) meeting after it is filed. A.R.S. § 41–1092.09(D). Only after that lengthy process, which may take eight or more months, may the Petitioner commence a legal challenge in the superior court.

Revocation, suspension, annulment or withdrawal of any license is not lawful *unless, before the action, the agency provides the licensee with notice and an opportunity for a hearing* in accordance with this article. If the agency finds that the public health, safety or welfare imperatively requires emergency action, ... the agency may order summary suspension of a license pending proceedings for revocation or other action. *These proceedings shall be promptly instituted and determined.*

(Emphasis added.)

¶ 12 We also interpret A.R.S. § 32–1263.02(C), which provides in pertinent part:

If the circumstances warrant an emergency suspension pursuant to § 41–1092.11, the board may dispense with the procedures required by this section.... [I]f the license has been summarily suspended pursuant to § 41–1092.11, the matter shall be *immediately* advanced to a formal board hearing as provided in title 41, chapter 6, article 10 [the Uniform Administrative Hearing Procedures statute], at which time the evidence supporting the imposition of disciplinary actions shall be presented and formal board action shall be taken.

(Emphasis added.)

 ¶ 13 Statutory interpretation entails questions of law, which we resolve independently of the decisions of the administrative agency or the superior court. *See Dioguardi v. Superior Court,* 184 Ariz. 414, 417, 909 P.2d 481, 484 (App.1995). We agree with the superior court that these statutes provide for a "reasonably prompt and meaningful post-deprivation plenary hearing." We do not agree, however, that the Board has met that statutory obligation in this case.

**2.** For example, when the Board president requests an informal interview with a licensee, the Board must notify the licensee of the reasons for the interview and must allow at least twenty days for preparation. A.R.S. § 32–1263.02(C)(2). After the interview, the interviewer must recommend in writing what, if any discipline may be required. *Id.* Similarly, if the president requests

**PROCEEDINGS PROMPTLY INSTITUTED
AND DETERMINED**

 ¶ 14 Petitioner asserts a property interest in his dental license and entitlement to due process before that license is taken or impaired. *See Comeau v. Ariz. State Bd. of Dental Exam'rs,* 196 Ariz. 102, 106, ¶ 18, 993 P.2d 1066, 1070 (App.1999). The State is authorized to protect the public health and welfare by regulating those who practice a profession. *See Ariz. State Bd. of Dental Exam'rs v. Fleischman,* 167 Ariz. 311, 314, 806 P.2d 900, 903 (App.1990). But, "[f]or those who are qualified, the practice of a profession is a right, not just a privilege," and "[b]efore the State can curtail that right, it must afford due process of law." *Schillerstrom v. State,* 180 Ariz. 468, 471, 885 P.2d 156, 159 (App.1994) (citing *Application of Levine,* 97 Ariz. 88, 90–91, 397 P.2d 205, 206–07 (1964)).

¶ 15 Petitioner does not dispute that the Board may call emergency meetings or act to protect the public safety. He contends, however, that A.R.S. § 32–1263.02 does not permit the Board to dispense with notice and a hearing simply because it perceives an emergency.

¶ 16 Section 32–1263.02 imposes an extensive set of duties on the Board. The Board shall investigate a signed complaint that suggests grounds for disciplinary action exist. A.R.S. § 32–1263.02(B). Once it receives a complaint, the Board president "shall request either an informal interview with the licensee ... or shall refer the complaint ... to an investigator." A.R.S. § 32–1263.02(C).

¶ 17 Subsection (C) further provides that "[i]f the circumstances warrant an emergency suspension pursuant to § 41–1092.11, the board may dispense with the procedures required by *this* section." (Emphasis added.) Those required procedures relate primarily to the conduct of informal interviews and the investigation of complaints.[2]

an investigation, the investigation must begin within ten days, and within ninety days the investigator must produce written recommendations of the discipline, if any, required. A.R.S. § 32–1263.02(C)(3). In either case, if the recommended discipline includes sanctions, a copy of the report must be given to the licensee. A.R.S. § 32–1263.02(C)(4). Following the interview or

¶ 18 Petitioner argues that § 32–1263.02(C)'s reference to suspending the provisions of "this section" does not permit the Board to dispense with the hearing required by § 41–1092.11 but only with the informal or investigative processes of § 32–1263.02 itself. Both statutes recognize, however, that an agency may need to take emergency action. And although § 41–1092.11(B) does not explicitly define an emergency suspension as an exception to the requirement of prior notice and a hearing, it does state that, based on an emergency, "the agency may order summary suspension ... pending proceedings for revocation or other action." Section 32–1263.02(C) also provides in part "if the license has been summarily suspended pursuant to § 41–1092.11, *the matter shall be immediately advanced to a formal board hearing* as provided in title 41, chapter 6, article 10, at which time the evidence supporting the imposition of disciplinary actions shall be presented and formal board action shall be taken." (Emphasis added and footnote omitted.) We interpret these statutes to contemplate and permit a summary suspension without notice or a pre-suspension hearing when emergency circumstances imperatively require such action before a hearing can be provided. In such circumstances, however, § 41–1092.11 requires a formal post-suspension hearing process to be "promptly instituted and determined." And, lest there be any question how prompt is prompt, § 32–1263.02(C) requires the matter to be "immediately advanced" to a formal hearing.

¶ 19 A prompt or immediate post-suspension hearing, in our opinion, satisfies due process in a true emergency because it accommodates the State's need to move swiftly when protective action cannot wait, yet grants "an opportunity to be heard at a significant time and in a significant manner."

*State v. O'Connor,* 171 Ariz. 19, 23, 827 P.2d 480, 484 (App.1992) (citing *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 437, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982), in which the Court recognized that a post-deprivation hearing may be constitutionally adequate when quick action is needed). *Cf. Zavala v. Ariz. State Pers. Bd.,* 159 Ariz. 256, 262–63, 766 P.2d 608, 614–15 (App.1988) (permanent status employee who does not pose a significant hazard on the job is entitled to pre-termination notice and hearing).

¶ 20 Petitioner argues that the acts he was alleged to have committed did not constitute a threat to the public health, safety, or welfare and accordingly did not warrant any emergency response. The Board, however, identified significant potential health and safety risks associated with his conduct, including risks associated with his use and handling of nitrous oxide. And because these findings were neither arbitrary nor capricious nor an abuse of the Board's discretion, we defer to its assessment of the risks.

¶ 21 This is not to say that we approve the manner in which the Board conducted its September 5 meeting. Although in an emergency, when it is imperative to summarily suspend a licensee, the Board may dispense with advance notice, this Board chose to give Petitioner notice and an opportunity to attend. Having done so, the Board was expressly required by A.R.S. § 32–1263.02(B) to grant Petitioner's lawyer's request for the name of the complainant. *See supra* ¶ 6. Likewise, the Board was expressly required by A.R.S. § 32–3108 (Supp.2000) to grant Petitioner's lawyer's request for an opportunity to address the Board on the complaint.[3] As the Board admitted at oral argument, it violated both of these statutory obligations in this case; we trust that it will recognize and honor them in the future.

investigation, the Board must issue preliminary findings and, if it finds revocation or suspension may be appropriate, initiate formal proceedings. A.R.S. § 32–1263.02(D). In the formal proceedings, the Board may subpoena witnesses, compel production of documents, administer oaths, and take testimony. A.R.S. § 32–1263.02(G). The Board also may refer the complaint to mediation under certain circumstances. A.R.S. § 32–1263.02(C)(5).

3. A.R.S. § 32–3108 provides, "Notwithstanding any law to the contrary, a regulatory entity shall allow a person or a representative of a person who has made a complaint or a person or a representative of a person against whom a complaint has been made attending a board disciplinary meeting open to the public to address the board on that complaint on the agenda by filling out a request form before or at the time of the meeting."

¶ 22 We do not resolve this case, however, on the basis of these violations. Instead, we focus our decision on the Board's failure to meet its obligation to provide Petitioner an immediate post-suspension hearing. We hold that §§ 32–1263.02 and 41–1092.11(B) permit license suspension without an advance hearing if, in the words of the latter statute, "public health, safety or welfare imperatively requires emergency action." We also hold that these statutes do not violate due process in so permitting, for in such imperative circumstances, they require that an immediate post-suspension hearing be provided, promptly instituted, *and* promptly determined. And, finally, we hold that both the statutes and due process are violated when, as here, the Board summarily suspends and then provides the hearing at its ordinary, far from expeditious, pace. *See supra* ¶ 9 n. 1.

¶ 23 We thus reject the Board's contention that it met its statutory and constitutional responsibilities by following the schedule set forth in A.R.S. § 41–1092.05(A) (1999) and commencing a hearing within sixty days of its suspension order. The schedule set forth in that statute may suffice in the ordinary course of business; it fails, however, to satisfy the requirement, in those rare circumstances when summary suspension is imperative, that a post-suspension hearing be "promptly instituted and determined."

¶ 24 It is neither our intent in this opinion, nor our proper function, to draft a rule or offer time-lines to guide the Board in meeting its obligation to promptly institute and determine a post-suspension hearing. Establishing and codifying such procedures is the role of the Board itself in consultation with the Attorney General. If a model for expeditious action is needed, however, one may be found in the rule that courts must follow when they issue temporary restraining orders without notice or a hearing. Such an order may not be granted without a clear showing "that immediate and irreparable injury, loss or damage will result ... before the adverse party or that party's attorney can be heard in opposition." Ariz. R. Civ. P. 65(d). Further, such an order must be followed by a hearing "at the earliest possible time," which must be held within 10 days, though subject to one extension of the same length. *Id.*

## REMEDY

¶ 25 Petitioner asks us to vacate the Board's emergency suspension. He contends that mere remand to the Board for another hearing will be futile because the outcome is "predetermined." We decline to draw this conclusion. "Such a vague allegation of futility is an insufficient basis on which to allow a party to bypass" the administrative hearing process. *Phoenix Children's Hosp. v. AHCCCS,* 195 Ariz. 277, 282, ¶ 19, 987 P.2d 763, 768 (App.1999).

¶ 26 Petitioner asks in the alternative that we stay the suspension order so that he may work. During the course of this special action proceeding, we have granted Petitioner a modified stay. Specifically, we have stayed the summary suspension of his license but ordered, as Petitioner proposed, that he immediately remove all containers of nitrous oxide from his offices, refrain from permitting new containers of the gas from being brought to the offices, and cease using nitrous oxide during the pendency of our order. We further ordered that he permit the Board, or its designee, to inspect his offices during normal business hours to ensure his compliance with our order. Finally, we specified that the Board was not precluded, during the pendency of our order, from conducting a hearing, with appropriate notice and an opportunity to be heard, to determine whether the circumstances warrant suspension of Petitioner's license.

¶ 27 The Board has now begun the hearing process but, as we have indicated, it is not the expedited process that the statutes governing summary suspension require. *See supra* ¶ 9 n. 1. We conclude that the most appropriate remedy under the circumstances is to leave our present order in effect. Petitioner may continue to practice, under the conditions we have established, until such time as the Board issues a decision in the course of the hearing process presently underway.

¶ 28 This shall not preclude the Board, however, from convening an expedited hearing, with appropriate notice and an opportunity to be heard, if the Board concludes that public health or safety concerns require an interim suspension or other protective measures before the ongoing process can take its course.

### ATTORNEY FEES

¶ 29 Petitioner asks for an award of reasonable attorney fees pursuant to A.R.S. § 12–341.01(C) (Supp.2000) on the ground that the Board's defense "constitutes harassment, is groundless and is not made in good faith." Because we do not find that the Board's position, though unsuccessful, was harassive, groundless, or lacking in good faith, we deny Petitioner's request.

### CONCLUSION

¶ 30 For the reasons set forth above, we accept jurisdiction, grant relief, and remand for proceedings in accordance with this opinion.

CONCURRING: ANN A. SCOTT TIMMER, Presiding Judge, and JOHN C. GEMMILL, Judge.