393 P.3d 151

**Michael WASSEF, Plaintiff/Appellant,**

v.

**ARIZONA STATE BOARD OF DENTAL EXAMINERS, THROUGH its Executive Director Elaine HUGUNIN, Defendant/Appellee.**

No. 1 CA–CV 15–0756

Court of Appeals of Arizona,
Division 1.

FILED 3/28/2017

Chester & Shein PC, Scottsdale, By Mark D. Chester, Counsel for Plaintiff/Appellant

Arizona Attorney General's Office, Phoenix, By Michael Raine, Counsel for Defendant/Appellee

Presiding Judge Kent E. Cattani delivered the opinion of the Court, in which Judge Lawrence F. Winthrop and Judge Rick A. Williams [1] joined.

## OPINION

CATTANI, Judge:

¶1 Michael Wassef, a licensed dentist, appeals the superior court's ruling affirming the Arizona State Board of Dental Examiners (the "Board")'s order suspending his li-

---

1. The Honorable Rick A. Williams, Judge of the Arizona Superior Court, has been authorized to sit in this matter under Article VI, Section 3 of the Arizona Constitution.

2. The Board asks the court to disregard those portions of Wassef's opening brief that do not contain appropriate citations to the record and Wassef's reference to documents he filed in the

cense to practice dentistry in Arizona. Wassef asserts that he was denied due process because he was not given a hearing before being ordered to undergo an inpatient substance abuse evaluation, and that his failure to comply with that order did not establish a basis for suspending his license. For reasons that follow, we affirm.

## FACTS AND PROCEDURAL BACKGROUND [2]

¶2 Wassef has a history of opioid addiction, and he participated in a monitored treatment program from 2002 through 2007.

¶3 In March 2014, a pharmacist contacted the Board with concerns about Wassef's prescription-writing practices. In response to the pharmacist's report, the Board reviewed Wassef's pharmacy management profile and subpoenaed records from his employer. The Board learned that from 2008 to 2014, Wassef had received prescriptions for controlled substances in increasing amounts. The prescriptions included hydrocodone, a controlled substance that Wassef had abused in the past. The Board also learned that Wassef had prescribed large amounts of the muscle relaxant Soma for his wife, his assistant, and his assistant's daughter, even though they were not patients of record and even though Soma is not typically prescribed for dental patients. Over a two-year period, Wassef wrote these individuals, collectively, forty-four Soma prescriptions.

¶4 The Board asked Wassef to undergo a urinalysis and meet with Dr. Michael Sucher, the medical director of the Board's monitored aftercare treatment program, for a preliminary substance abuse screening assessment, to be followed by further evaluation if deemed necessary based on the assessment. Wassef submitted to the urinalysis and tested positive for Soma and Tramadol, medi-

superior court that are not part of the administrative record. Because Wassef did not request an evidentiary hearing, and the superior court did not conduct one, he was not entitled to submit additional evidence, and we base our review solely on the administrative record. *See* Ariz. Rev. Stat. ("A.R.S.") §§ 12–904(B), –910(A), (D), (E).

cations for which he had prescriptions. He refused, however, to meet with Dr. Sucher.[3]

¶ 5 On March 19, 2014, the Board determined that there was a "real and significant" risk that Wassef had relapsed in his addiction, and, pursuant to its authority under A.R.S. § 32–1207(B)(6), issued an order ("the Interim Order") directing Wassef to obtain an inpatient substance abuse evaluation within fourteen days at one of three approved facilities that have significant experience and expertise in evaluating and treating professionals with substance abuse/addiction issues.[4] Wassef did not comply with the Interim Order, declining to be admitted for inpatient assessment and asserting that an outpatient evaluation at an addiction treatment facility should be acceptable. The Board thus determined that emergency action was required based on public health, safety, and welfare concerns and suspended Wassef's license, stating it would lift the suspension if Wassef complied with the Interim Order.

¶ 6 The Board then filed a Complaint and Notice of Hearing alleging that Wassef's refusal to comply with the Interim Order constituted unprofessional conduct that jeopardized the health and safety of the public in violation of A.R.S. § 32–1201.01(14),[5] and that Wassef's license should be suspended.[6] After an evidentiary hearing, an administrative law judge ("ALJ") ruled that the Board had failed to prove by a preponderance of the evidence that Wassef was unsafe to practice and recommended that the Board reinstate his license.

¶ 7 The Board rejected or modified several portions of the ALJ's recommendation and ordered that Wassef's license remain suspended until he complied with the Interim

Order. *See* A.R.S. § 41–1092.08(B) (authorizing the agency head, executive director, commission, or board to "review the [ALJ's] decision and accept, reject or modify it"). The Board subsequently denied Wassef's request for a rehearing, and he filed a complaint for judicial review in the superior court. *See* A.R.S. § 12–904(A). The superior court affirmed the Board's decision, and Wassef timely appealed.

¶ 8 This court stayed the Board's suspension order pending disposition of this appeal. We have jurisdiction under A.R.S. § 12–913. *See Svendsen v. Ariz. Dep't of Transp.*, 234 Ariz. 528, 533, ¶ 13, 323 P.3d 1179, 1184 (App. 2014).

## DISCUSSION

¶ 9 Wassef argues the Board denied him due process of law by not allowing him to challenge the merits of the Interim Order or to otherwise be heard before suspending his license. He also contends the Board's determination that he posed a danger to the health, welfare, or safety of patients and the public was not supported by substantial evidence and should be vacated.

¶ 10 Arizona law grants the Board authority to discipline a licensee for "unprofessional conduct," which includes "[a]ny conduct or practice that constitutes a danger to the health, welfare or safety of the patient or the public." A.R.S. §§ 32–1263(A)(1), – 1201.01(14).

¶ 11 In reviewing a judgment upholding the decision of an administrative agency, we independently review the record and will uphold the agency's decision if it is supported by substantial evidence and is not

---

3. Wassef had previously been monitored by Dr. Sucher as part of the aftercare treatment program, and Wassef asserted in these proceedings that Dr. Sucher's prior involvement created a conflict of interest. Wassef requested permission to meet with another evaluator, and the Board agreed to allow him to do so. But the specialist Wassef proposed declined to conduct the assessment.

4. Absent material revisions after the relevant date, we cite a statute's current version.

5. The statute defining unprofessional conduct in dentistry was renumbered and slightly modified in 2015. *See* A.R.S. § 32–1201.01; A.R.S. § 32–1201(21) (2014); 2015 Ariz. Sess. Laws, ch. 196, §§ 1–2 (1st Reg. Sess.). Because the 2015 revisions were not material to the issues in this case, we cite the current version throughout this decision.

6. The Board also alleged Wassef's actions constituted unprofessional conduct under A.R.S. § 32–1201.01(22), but removed that allegation from its final decision.

contrary to law or arbitrary and capricious. *Golob v. Ariz. Med. Bd.*, 217 Ariz. 505, 509, ¶ 11, 176 P.3d 703, 707 (App. 2008); *see also* A.R.S. § 12–910(E). We review the evidence in the light most favorable to upholding the Board's decision and will not substitute our judgment for that of the agency regarding factual questions and agency expertise. *DeGroot v. Ariz. Racing Comm'n*, 141 Ariz. 331, 336, 686 P.2d 1301, 1305 (App. 1984). Substantial evidence exists if the record supports the decision, even if the record would also support a different conclusion. *Id.* We review constitutional issues, including an alleged violation of due process, de novo. *Carlson v. Ariz. State Pers. Bd.*, 214 Ariz. 426, 430, ¶ 13, 153 P.3d 1055, 1059 (App. 2007).

## I. Due Process.[7]

¶ 12 Wassef argues the Board denied him due process by suspending his license without first granting him an opportunity to be heard. Although "[t]he State is authorized to protect the public health and welfare by regulating those who practice a profession," *Dahnad v. Buttrick*, 201 Ariz. 394, 398, ¶ 14, 36 P.3d 742, 746 (App. 2001), a licensee has a property interest in his or her license, and the State must afford due process before it can curtail that right. *Comeau v. Ariz. State Bd. of Dental Exam'rs*, 196 Ariz. 102, 106, ¶ 18, 993 P.2d 1066, 1070 (App. 1999); *Schillerstrom v. State*, 180 Ariz. 468, 471, 885 P.2d 156, 159 (App. 1994); *see also* A.R.S. § 41–1092.11(B). Due process is not a static concept, and may vary with the setting, but generally requires "notice and an opportunity to be heard in a meaningful manner and at a meaningful time." *Gaveck v. Ariz. Bd. of Podiatry Exam'rs*, 222 Ariz. 433, 437, ¶ 14, 215 P.3d 1114, 1118 (App. 2009) (citation omitted).

¶ 13 The Board was not required to hold a hearing before it entered the Interim Order. *See* A.R.S. § 32–1207(B)(6) (granting the Board the authority to require licensees to submit to physical examinations); *see also* *Alexander D. v. State Bd. of Dental Exam'rs*, 231 Cal.App.3d 92, 96–99, 282 Cal.Rptr. 201

(1991) (holding that the board of dentistry was not required to conduct a hearing before issuing an order requiring a licensee to undergo a psychiatric examination; the order was investigatory in nature and any discipline would be the result of a separate adjudicatory hearing accompanied by due process protections); *Humenansky v. Minn. Bd. of Med. Exam'rs*, 525 N.W.2d 559, 566 (Minn. Ct.App.1995) (order requiring psychiatrist to undergo mental and physical examination did not implicate her property interest in her license to practice medicine, and the board was not required to afford her due process). And the Board has the authority to summarily suspend a license when it concludes, as it did in this case, that an emergency exists. *See* A.R.S. §§ 32–1263.02(C), 41–1092.11(B). Such a suspension satisfies due process requirements if the licensee subsequently receives a prompt and adequate opportunity to be heard. *Dahnad*, 201 Ariz. at 399, ¶¶ 18–19, 36 P.3d at 747.

¶ 14 Wassef does not deny that he received a prompt hearing after the summary suspension, but he contends that no emergency circumstances existed to support the suspension because he had "disproved" the Board's suspicions that he had self-prescribed medications, written inappropriate prescriptions, and/or was engaged in substance abuse. To the contrary, the Board considered information that Wassef—who had a history of opioid addiction and self-prescribing—was improperly prescribing medications to himself and to family members who were not patients, and that he refused to comply with the Board's order that he obtain an inpatient evaluation to allow the Board to determine whether his substance abuse disorder had recurred. Under these circumstances, the Board was not required to accept Wassef's explanations, and Wassef did not disprove the Board's suspicions. Thus, the Board had reasonable grounds to take emergency action to prevent harm to the public.

¶ 15 We also reject Wassef's contention that the allegations against him were not sufficiently serious to warrant emergency ac-

---

7. Wassef arguably waived his due process arguments by not asserting them in the administrative proceedings. *See DeGroot,* 141 Ariz. at 340,

686 P.2d at 1310. Nevertheless, we address these arguments.

tion and that the Board did not make detailed factual findings about the nature of the emergency. By statute, the Board had the discretion to assess the risks posed by Wassef, given the allegations and available information. In that regard, the Board reasonably relied on the expertise of Dr. Sucher, its addiction consultant, in evaluating Wassef's actions in response to the Board's request for additional information and the risks associated with his continued refusal to comply. In such a situation, Arizona law requires only that the Board find that an emergency situation exists, not that it set forth a detailed description of the emergency. A.R.S. §§ 32–1263.02(C), 41–1092.11(B). In short, the Board's actions were not arbitrary or capricious, nor were they an abuse of its discretion. *See Dahnad*, 201 Ariz. at 399, ¶ 20, 36 P.3d at 747.

¶ 16 Finally, we reject Wassef's argument that the Board failed to provide a written justification for its modification of the ALJ's ruling, as required by A.R.S. § 41–1092.08(B). *See Ritland v. Ariz. State Bd. of Med. Exam'rs*, 213 Ariz. 187, 191, ¶¶ 13–14, 140 P.3d 970, 974 (App. 2006) (requiring the board to set forth factual support when it overrules an ALJ's credibility findings). Although the Board did not alter any of the ALJ's credibility determinations, the Board's four-page detailed description and explanation of its changes to the ALJ's ruling satisfies the statutory requirement.

## II. Sufficiency of the Evidence.

¶ 17 Wassef contends the Board failed to show that he was unsafe to practice dentistry. We disagree.

¶ 18 The Board presented evidence at the hearing that Wassef was not safe to practice dentistry based on a confluence of uncontested factors: (1) he had a history of substance abuse, which is a chronic condition; (2) his medical records indicated that he had an ongoing back pain problem for which he had been taking prescription medications in increasing doses; (3) he was prescribing drugs in an irregular manner to persons who were not patients of record; and (4) he refused to participate in a screening assessment and did not comply with the Board's order that he obtain a comprehensive inpatient evaluation. The Board's expert, Dr. Sucher, opined that based on these circumstances, Wassef was not safe to practice dentistry.

¶ 19 In addition, the record contains evidence of Wassef's unreasonable efforts to avoid complying with the Interim Order. For example, when Wassef objected to the cost of the inpatient evaluation, the Board informed him that it would pay for the evaluation, but he still did not comply with the order. Rather, he maintained the Board should accept instead an outpatient evaluation he independently obtained from a local treatment facility, but which Dr. Sucher concluded was "wholly inadequate" for the Board's purposes. Eventually, after the deadline for compliance passed and the Board summarily suspended his license, Wassef indicated he would obtain an evaluation at a facility in California, but he instead appeared unannounced at a different facility, which he then left when the clinic would not proceed with the evaluation on an outpatient basis. This evidence of Wassef's unusual behavior and continuing attempts to avoid compliance with the Interim Order further supports the Board's determination that he posed a potential danger to his patients and the public.

¶ 20 Wassef also maintains that his failure to comply with the Interim Order cannot be the sole basis for suspending his dental license. But the Board's suspension order was based on the totality of the circumstances: Wassef's failure to comply with the Interim Order combined with his prior history of substance abuse, irregular prescription-writing practices, and information regarding his use of prescription medications. And we reject Wassef's argument that the Board did not have grounds to consider him a danger to the public without having received complaints from his patients or co-workers.

¶ 21 Finally, Wassef's contention that testimony from Dr. Sucher and the Board's Executive Director, Elaine Hugunin, was "contradictory at times" misstates their testimony, and in any event does not establish that the Board's decision was improper. *See DeGroot*, 141 Ariz. at 336, 686 P.2d at 1306 ("If two inconsistent factual conclusions could be supported by the record, then there is substan-

tial evidence to support an administrative decision that elects either conclusion.") (citation omitted). The Board considered substantial evidence supporting its determination that Wassef's behavior presented a danger to the health, safety, and welfare of his patients or the public. Accordingly, the Board did not act in an arbitrary or capricious manner by finding that Wassef's unprofessional conduct justified suspending his license.

## CONCLUSION

¶ 22 For the foregoing reasons, we affirm the superior court's decision. In addition, it is ordered lifting the stay previously entered by this court on January 5, 2016.